**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-2385**

L-3 COMMUNICATIONS CORPORATION; L-3 APPLIED TECHNOLOGIES, INC.,

　　　　　　　Plaintiffs - Appellants,

　　　v.

SERCO, INC.,

　　　　　　　Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Gerald Bruce Lee, District Judge.  (1:15-cv-00701-GBL-JFA)

Argued:  September 21, 2016　　　Decided:  December 14, 2016

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Steven L. Levitt, LEVITT LLP, Mineola, New York, for Appellants.  Amy Elizabeth Miller, MCGUIREWOODS LLP, Washington, D.C., for Appellee.  **ON BRIEF:** Benjamin G. Chew, Nigel L. Wilkinson, Rory E. Adams, Joshua N. Drian, MANATT, PHELPS & PHILLIPS LLP, Washington, D.C.; Karen L. Weiss, Catherine B. Silliman, LEVITT LLP, Mineola, New York, for Appellants.  John D. Wilburn, Steven P. Mulligan, Tysons Corner, Virginia, Anand V. Ramana, Jeffrey L. Brown, Elizabeth H. Goodall, MCGUIREWOODS LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Plaintiffs L-3 Communications Corp. and L-3 Applied Technologies, Inc. (L-3 ATI) (collectively, the plaintiffs) filed this diversity action alleging numerous tort claims against Serco, Inc. arising out of a failed business relationship. The plaintiffs contended that Serco engaged in a "bid rigging" scheme with another company, Jaxon Engineering & Maintenance, Inc., to exclude the plaintiffs from conducting work on certain task orders issued under Serco's prime contract with the United States government. The plaintiffs alleged, among other things, that Serco's conduct amounted to tortious interference with the plaintiffs' business expectancy as well as statutory business conspiracy under Virginia law.

The district court dismissed the entire action under Federal Rule of Civil Procedure 12(b)(1). The court concluded that the plaintiffs did not have standing under Article III of the Constitution, because they had not established the existence of a valid business expectancy. The court also dismissed two of the claims on ripeness grounds, holding that the plaintiffs' alleged injuries had not yet occurred.

We conclude that the plaintiffs' allegations satisfy the constitutional requirement of a concrete, particularized injury for purposes of standing. The separate but related question whether the plaintiffs plausibly have alleged a business

3

expectancy is one properly considered under Federal Rule of Civil Procedure 12(b)(6) or on a motion for summary judgment.

We also hold that the plaintiffs' declaratory judgment claims are not ripe for adjudication, and therefore affirm the district court's dismissal of those claims. Accordingly, we affirm the judgment of the district court in part, vacate in part, and remand for further proceedings.

## I.

In 2004, the United States Air Force Space Command (the Air Force) awarded an indefinite delivery, indefinite quantity contract (the prime contract) to Serco.[1] Under the prime contract, Serco, as the prime contractor, was responsible for testing military sites around the world regarding their protection from high-altitude electromagnetic pulse (HEMP) events. In practice, when the Air Force provided Serco with a statement of work under the prime contract, Serco would subcontract HEMP work to other companies. Serco selected these subcontractors by issuing requests for proposal to certain qualified companies. According to the complaint, between 2004 and July 2009, Serco awarded "most, if not all of the [HEMP] task orders" under the prime contract to the plaintiffs.

---

[1] In 2004, Serco was known as SI International.

4

The plaintiffs' complaint alleged that plaintiff L-3 ATI was a "wholly owned indirect subsidiary" of plaintiff L-3 Communications, and that L-3 ATI was the "successor in interest" to other entities that performed subcontracted HEMP work, namely "Jaycor, the Titan Corporation, and the applied technologies division of L-3 Services, Inc." The complaint also specified that references in the complaint to the plaintiffs included their predecessors in interest.

After 2009, Serco allegedly began awarding all HEMP task orders to another company, Jaxon Engineering & Maintenance, Inc. (Jaxon). The plaintiffs alleged that Jaxon was not qualified to perform the assigned work, and that Serco's decision to award HEMP work to Jaxon was based on a "fraudulent scheme" between Serco and Jaxon in which Serco actively prevented the plaintiffs from fairly competing for the task orders. To facilitate this scheme, the plaintiffs alleged that Jaxon hired the plaintiffs' employees, who used the plaintiffs' proprietary information to benefit Jaxon in the bidding process.

In 2010, the plaintiffs sued their former employees and Jaxon on numerous claims, including that these employees took certain proprietary information from the plaintiffs and gave that information to Jaxon. The parties stipulated to a dismissal of the complaint with prejudice in March 2016. See L-3 Commc'ns. Corp. v. Jaxon Eng'g & Maint., Inc., 10-cv-2868,

5

Dkt. No. 1370 (D. Colo. Mar. 3, 2016). In 2014, the plaintiffs filed a complaint in Virginia state court against Serco asserting similar claims to those at issue here, but took a voluntary nonsuit.

In the present case, initiated in 2015, the plaintiffs filed an 81-count amended complaint against Serco, asserting claims of tortious interference with business expectancy for HEMP task orders from 2009 to the present, based on the plaintiffs' "long history of incumbency and unmatched experience" (Counts 1-34); aiding and abetting Jaxon to tortiously interfere with this business expectancy (Counts 35-68); civil conspiracy and business conspiracy under Virginia law (Counts 69-70); violations of the Colorado Organized Crime Control Act (Counts 71-73); tortious interference with the plaintiffs' former employees' non-disclosure agreements (Counts 74-78); negligent misrepresentation of the plaintiffs' business relationship (Count 79); and breach of fiduciary duty and misappropriation of trade secrets, based on Serco's intent to use the plaintiffs' confidential information to compete with the plaintiffs for future HEMP projects (Counts 80-81). The plaintiffs sought damages of $80,000,000 for lost profits, unjust enrichment, and disgorgement of unlawful profits resulting from Serco's scheme with Jaxon. They also sought a declaratory judgment in Counts 80 and 81, asking the court to

6

"declare that any competition against [the plaintiffs] by Serco in the HEMP-Testing area would constitute a breach of Serco's fiduciary duties" to the plaintiffs and a misappropriation of the plaintiffs' trade secrets.

Serco filed motions to dismiss under Rules 12(b)(1) and 12(b)(6), as well as a motion for summary judgment. In its Rule 12(b)(1) motion, Serco asserted that the plaintiffs' claims of tortious interference with business expectancy rose and fell under a certain subcontract issued in 2004 (the subcontract) between Serco and Titan Corporation (Titan), a predecessor of L-3 Services, which is not a named plaintiff in the present case. The subcontract provided, in relevant parts:

> Prime Contractor has no obligation to issue and there is no guaranty to Subcontractor that it will receive any work under the terms of this Subcontract. . . .
>
> All work will be assigned to Subcontractor in the form of [task orders] issued by Prime Contractor's authorized Subcontract Administrator. Work not set forth in a written Task Order, executed by subcontractor and Prime Contractor's authorized Subcontract Administrator, is not authorized. . . .
>
> Neither this Subcontract nor any right or duty under it, except the right to receive payment, may be assigned by Subcontractor, without prior written consent of Prime Contractor, which consent may be withheld in the sole discretion of Prime Contractor.

The subcontract also provided that any waiver of these requirements must be made in writing and authorized by Serco, and that the subcontractor must notify the prime contractor of any changes in ownership. In March 2008, Serco entered into a

written subcontract modification with L-3 Services to identify that entity, instead of Titan, as the named subcontractor.

Serco contended in its motion to dismiss brought under Rule 12(b)(1) that because neither of the named plaintiffs, L-3 Communications nor L-3 ATI, were parties to the subcontract, they lacked standing under Article III of the Constitution to bring their claims. The plaintiffs responded that, under their allegations, their claimed business expectancy arose from their history of performance of HEMP work, regardless of the subcontract.[2] The plaintiffs further explained that the complaint asserted claims of tortious interference with employees' non-disclosure agreements, completely apart from the subcontract.

After a hearing, the district court granted Serco's motion to dismiss under Rule 12(b)(1). The court concluded that the plaintiffs had presented insufficient evidence of a business expectancy in the losses alleged, because the plaintiffs were not parties to the subcontract and, thus, did not have standing

---

[2] The plaintiffs argued in the alternative that they were the assignees of the subcontract and the current causes of action, pursuant to the terms of a 2011 contribution agreement which transferred all of the "assets" of L-3 Services to L-3 ATI.

8

to bring this suit.[3] The court additionally held that the claims alleged in Counts 80 and 81 were not ripe for adjudication because the injuries alleged had not yet occurred. The plaintiffs now appeal.

## II.

The plaintiffs argue that the district court erred in dismissing their complaint under Rule 12(b)(1). They maintain that the issue whether they had a valid business expectancy is a question regarding the merits of the tortious interference claims, not a question of constitutional standing. The plaintiffs further assert that, in any event, they adequately pleaded the elements of tortious interference with business expectancy based on their previous course of performance of HEMP work. The plaintiffs also contend that the court erred in focusing on the existence of a business expectancy arising from the subcontract when many of the claims were unrelated to the subcontract. Finally, the plaintiffs submit that the declaratory judgment claims in Counts 80 and 81 were ripe for adjudication.

In response, Serco primarily contends that the plaintiffs did not have the "personal stake" in their lawsuit necessary to

---

[3] The district court also rejected the plaintiffs' assertion that they had standing to sue as assignees of the subcontract.

satisfy the Article III standing requirement, because they did not have any rights or expectancies under the subcontract to which they were neither parties nor assignees. Serco also argues that the district court properly dismissed Counts 80 and 81 on ripeness grounds, because the plaintiffs did not identify an immediate, "real" controversy.

We agree with the plaintiffs that the district court erred in dismissing Counts 1 through 79 on jurisdictional grounds, but conclude that the district court properly dismissed Counts 80 and 81 for lack of ripeness. We first address the issue of standing for Counts 1 through 79.

We review de novo a district court's dismissal of a complaint under Rule 12(b)(1). In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014). The doctrine of constitutional standing arises from the case or controversy requirement of Article III, and is a jurisdictional inquiry regarding the power of the courts to adjudicate a litigant's claim. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The case or controversy requirement generally ensures that "the conflicting contentions of the parties present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or

abstract." Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006) (citation and internal quotation marks omitted).

To establish Article III standing, a plaintiff invoking federal jurisdiction bears the burden to show that he has a "personal stake" in the outcome of the suit. Camreta v. Greene, 563 U.S. 692, 701 (2011). This requirement is satisfied if the plaintiff has shown an actual or imminent injury in fact that is concrete and particularized, a causal connection between the injury and the conduct complained of, and a likelihood that the injury would be redressed by a favorable decision. Id.; Lujan, 504 U.S. at 560-61. An injury is "concrete" if it is "real," as opposed to "abstract," Spokeo, 136 S. Ct. at 1548, and is "particularized" if it "affect[s] the plaintiff in a personal and individual way," rather than as an undifferentiated, collective grievance. Id. (citing United States v. Richardson, 418 U.S. 166, 177 (1974)); Lujan, 504 U.S. at 560 n.1.

An examination of the district court's analysis in the present case reveals that the court, in accepting Serco's arguments, effectively conducted a merits-related evaluation of the plausibility of the plaintiffs' claims rather than a jurisdictional inquiry under Article III. The court dismissed the case for lack of standing based on its finding that the plaintiffs were not parties to the subcontract, through which

11

the HEMP work previously flowed, and therefore had not shown that they had a valid business expectancy.

The question whether the plaintiffs had a valid business expectancy is relevant to the issue whether they satisfied an element of their claim for tortious interference under Virginia law. Priority Auto Grp. v. Ford Motor Co., 757 F.3d 137, 143 (4th Cir. 2014). Accordingly, the requirement that the plaintiffs establish that they had such an expectancy, arising either out of the subcontract or the parties' course of conduct, does not involve an issue of constitutional standing, but presents the question whether the plaintiffs can establish the substantive elements of their claim. See Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (by "alleg[ing] the existence of a contract, express or implied, and a concomitant breach of that contract, [the plaintiff's] complaint adequately show[ed] an injury to her rights" for purposes of standing, even though she was not a party to the contracts in question and could not survive a motion to dismiss under Rule 12(b)(6)); Curtis Lumber Co., Inc. v. La. Pac. Corp., 618 F.3d 762, 770-71 (8th Cir. 2010) (whether a plaintiff ultimately recovers the damages he seeks "is a question better left to the applicable substantive law" rather than a standing inquiry under Article III).

We acknowledge that the distinction between the "personal stake" requirement for purposes of standing, and the sufficiency

12

of a plaintiff's allegations of injury as an element of a claim, often may be unclear. Nevertheless, in the present case, we disagree with the district court's conclusion that the plaintiffs lacked a "personal stake" in the dispute because they did not have a business expectancy arising from the subcontract. Although the plaintiffs' allegations of a business expectancy inform our understanding of the claimed injury for purposes of standing, the question whether the plaintiffs' claims ultimately lack merit does not resolve the issue whether the court had the constitutional authority to adjudicate those claims. For purposes of the present standing analysis, we must determine only whether the plaintiffs sufficiently established at this stage of the proceedings that they were injured by Serco in a concrete and particularized manner redressable by the court.[4] See Camreta, 563 U.S. at 701. Thus, Serco's parallel contention that a business expectancy did not arise from the subcontract, or from a separate course of conduct, is more appropriately

_____

[4] The plaintiffs also argue that the district court effectively analyzed whether the plaintiffs were the real parties in interest under Federal Rule of Civil Procedure 17(a), not whether the court had the power to adjudicate the dispute under Article III. Based on our holding, we need not address this issue.

13

addressed in an evaluation of the merits of the plaintiffs'
claims.[5]

The plaintiffs have alleged financial injury in the amount
of $80,000,000 based on several theories of liability arising
from the same set of facts. In particular, the plaintiffs
claimed that, absent the fraudulent scheme between Serco and
Jaxon, Serco would have awarded certain specific task orders to
the plaintiffs. The plaintiffs further alleged that Serco's
actions "assisting, financing, and vouching for Jaxon as a
viable HEMP-Testing operation" resulted in the plaintiffs being
denied "many millions of dollars in non-Serco HEMP-related
contracts that instead went to Jaxon." These alleged injuries
are concrete and particularized to the plaintiffs, and are "not
conjectural or hypothetical." Lujan, 504 U.S. at 560; Miller,
462 F.3d at 316-17. The injuries also are traceable to Serco's
challenged conduct and can be redressed by a favorable decision
of the Court. Miller, 462 F.3d at 316. Accordingly, we
conclude that the plaintiffs have met their burden of

---

[5] In addition to their disagreement regarding the
plaintiffs' rights under the subcontract, the parties also
dispute whether their course of conduct established a business
expectancy. For the reasons discussed above, the district court
may evaluate the parties' course of conduct in considering a
motion under Rule 12(b)(6) or a motion for summary judgment.

demonstrating a "personal stake" in the dispute for purposes of Article III standing.

Additionally, we observe that although the district court's standing analysis focused on the plaintiffs' business expectancy allegations, our conclusion applies equally to the plaintiffs' other claims that are unrelated to the subcontract. The plaintiffs generally alleged in each of their claims the same injuries suffered by the same parties. None of the plaintiffs' claims alleged a breach of the subcontract, and all of the claims relied on the same series of tortious conduct allegedly committed by Serco. To the extent that the plaintiffs are unable to establish an element of any of these causes of action, such a deficiency properly is addressed under Rule 12(b)(6) or through entry of summary judgment.

In reaching this conclusion, we express no opinion whether the plaintiffs' allegations are sufficiently plausible to survive a motion under Rule 12(b)(6), nor whether the evidence ultimately will substantiate their claims. We hold only that the plaintiffs have shown the concrete and particularized nature of their alleged injury and, thus, that the district court has the constitutional authority to adjudicate their claims.[6]

---

[6] Because we vacate the district court's judgment on the basis that the plaintiffs have demonstrated Article III standing at this stage of the proceedings, we do not reach the district (Continued)

15

Finally, the plaintiffs argue that the district court erred in dismissing for lack of ripeness Counts 80 and 81, which sought declaratory judgment for breach of fiduciary duty and misappropriation of trade secrets. The doctrine of ripeness, also a component of the case or controversy requirement, asks whether a controversy between the parties "is presented in clean-cut and concrete form." Scoggins v. Lee's Crossing Homeowners Ass'n, 718 F.3d 262, 270 (4th Cir. 2013); Miller, 462 F.3d at 318-19 (citation and internal quotation marks omitted). A case is ripe and "fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Doe v. Va. Dep't of State Police, 713 F.3d 745, 758 (4th Cir. 2013) (quoting Miller, 462 F.3d at 319). Accordingly, a claim should be dismissed for lack of ripeness "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." Id. (citation and internal quotation marks omitted).

The plaintiffs alleged in Counts 80 and 81 that Serco intends to use their confidential information to compete against them for a future HEMP project currently being "contemplated" by the Air Force. Thus, the plaintiffs' injuries have not yet

---

court's additional conclusion that the subcontract had not been assigned to the plaintiffs.

16

occurred. The plaintiffs seek a broad declaration that "any competition" against the plaintiffs for future HEMP work would constitute a breach of Serco's fiduciary duties and a misappropriation of the plaintiffs' trade secrets.

Based on the allegations in the complaint, it is entirely speculative at this stage whether the plaintiffs or Serco might bid on any future projects announced by the Air Force and, if so, whether Serco will use the plaintiffs' confidential information improperly. Under these circumstances, we conclude that the injuries alleged in the complaint are "wholly speculative" and "dependent on future uncertainties." Doe, 713 F.3d at 758 (citation omitted). We therefore affirm the district court's conclusion that Counts 80 and 81 are not ripe for adjudication.

### III.

For these reasons, we vacate the district court's ruling regarding standing, affirm the court's dismissal of the declaratory judgment claims, and remand this case for further proceedings consistent with the principles expressed in this opinion.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

17