PRESENT: All the Justices

FRANCIS HOSPITALITY, INC., ET AL.

                                        OPINION BY

v. Record No. 170894             JUSTICE ELIZABETH A. McCLANAHAN
                                       November 21, 2018

READ PROPERTIES, LLC, D/B/A
COLDWELL BANKER COMMERCIAL READ & COMPANY

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
John T. Cook, Judge

Read Properties, LLC ("Read Properties") filed a complaint against Francis Hospitality, Inc. ("Francis Hospitality") and Delta Educational Systems, Inc. ("Delta") asserting claims for breach of contract, intentional interference with contract, and statutory business conspiracy under Code §§ 18.2-499 and -500. The circuit court found in favor of Read Properties on all claims and entered judgment against Francis Hospitality and Delta on an award of three-fold damages and attorney's fees pursuant to Code § 18.2-500.

Francis Hospitality and Delta contend that the circuit erred in ruling that they were liable for tortiously interfering with their own contract and, therefore, in finding that their tortious interference could serve as the predicate unlawful act for statutory business conspiracy. We agree with appellants and will reverse the circuit court's judgment against them as to the claims for tortious interference and statutory business conspiracy and will enter final judgment in favor of Read Properties as to its claims for breach of contract on which it prevailed in the circuit court.

I. BACKGROUND

In 2002, Richard Read, a commercial real estate broker with Coldwell Banker Commercial Forehand & Co. ("Forehand"), assisted in negotiating a lease agreement between Creekside Development Company, Inc. ("Creekside"), as lessor, and Delta, as lessee. The

agreement, dated September 25, 2002, provided for the lease of approximately 2.668 acres with a building containing 21,600 square feet located on Creekside Lane in Lynchburg. The term was five years with an option to renew the lease agreement under the same terms and conditions for two additional periods of five years each. Creekside and Delta renewed the lease agreement in 2007 and 2012, with the second extension expiring on September 30, 2017.

As relevant here, the lease agreement required payment of a monthly leasing fee to Forehand. Specifically, the agreement stated that the parties "acknowledge that Coldwell Banker Forehand & Co. and Rick Read are licensed Realtors in the State of Virginia and are representing the LESSEE in this transaction" and that "Coldwell Banker Forehand & Co. is to receive a leasing fee equal to five percent (5%) of the gross rents as received during the Lease term or applied options (not to exceed $810 monthly)." The lease agreement also stated that "[t]he terms, conditions and covenants" of the agreement "shall apply to, inure to the benefit of and be binding upon the parties hereto, their respective successors in interest and legal representatives."

Pursuant to the terms of the lease agreement, Forehand received a monthly leasing fee of $810 through December 2010, when Read Properties, a limited liability company formed by Richard Read, purchased Forehand's commercial real estate division. On December 22, 2010, Read Properties and Forehand entered into an asset purchase agreement under which Forehand's rights and obligations with regard to certain contracts were assigned to Read Properties. The Creekside property was listed as one of the contracts included in the assignment. Beginning in January 2011, Read Properties received the $810 monthly leasing fee provided for in the lease of the Creekside property.

In 2013, Creekside entered into a real estate purchase agreement with Francis Hospitality for the sale of the property under lease to Delta. The real estate purchase agreement was made

2

subject to the lease agreement and its amendments, which were attached as exhibits to the real estate purchase agreement. On March 19, 2014, the sale of the Creekside property closed and Creekside assigned the lease agreement to Francis Hospitality. Read Properties did not receive a leasing fee in April 2014 or thereafter.

Read Properties filed a warrant in debt against Francis Hospitality and Delta in the Lynchburg General District Court in June 2014, seeking damages for breach of the lease agreement. On August 27, 2014, Francis Hospitality and Delta executed a third amendment to the lease agreement, in which the provision for payment of the leasing fee was eliminated. Francis Hospitality and Delta also executed an indemnification agreement whereby Francis Hospitality agreed to indemnify Delta "against all losses, claims, damages, liabilities, cost or expenses, arising out of" the third amendment to the lease agreement and the lawsuit filed by Read Properties. Read Properties nonsuited the general district court action and filed the current action in the circuit court.

Read Properties asserts three causes of action in its complaint. In Count I, Read Properties alleges breach of contract by Francis Hospitality and Delta and asserts that as the successor-in-interest to Forehand, an intended third-party beneficiary of the lease, it was entitled to receive the leasing fees through September 30, 2017. In Count II, Read Properties alleges intentional interference with contract by Francis Hospitality and Delta and asserts that Francis Hospitality and Delta tortiously interfered with Read Properties' right to receive the leasing fees under the lease agreement when they entered into the third amendment to the lease, terminating the provision for payment of leasing fees. In Count III, Read Properties alleges a statutory business conspiracy by Francis Hospitality and Delta in violation of Code §§ 18.2-499 and -500 and asserts that Francis Hospitality and Delta conspired to tortiously interfere with Read

3

Properties' right to receive the leasing fees under the lease agreement, entitling it to three-fold damages and attorney's fees.

After a bench trial, the circuit court issued a letter opinion in which it separately "address[ed] each of the causes of action." Finding that Forehand "transferred the right to the leasing fees to Read Properties," the circuit court ruled in favor of Read Properties as to its claim in Count I that Francis Hospitality and Delta breached the lease agreement under which Read Properties was entitled to the leasing fees as an intended third-party beneficiary. Therefore, with regard to Read Properties' claim of "$34,020 of leasing fees until the end of the lease in September of 2017," the circuit court found that "Delta and Francis Hospitality are jointly liable for the leasing fees."

With regard to Count II for intentional interference with contract, the circuit court ruled that Read Properties "proved all elements of this cause of action against both Francis Hospitality and Delta." The circuit court rejected the appellants' argument that "they cannot intentionally interfere with their own contract," ruling that "Francis Hospitality and Delta interfered with each other's obligation to pay Re[a]d the leasing fee."

Regarding Count III, alleging statutory business conspiracy under Code §§ 18.2-499 and -500, the circuit court found that the tortious interference with the lease agreement by Francis Hospitality and Delta satisfied the statute's requirement of an underlying unlawful act. Concluding that Read Properties "proved by clear and convincing evidence all the elements of the civil conspiracy claim against Francis Hospitality and Delta," the circuit court awarded

4

"three-fold damages under Va. Code § 18.2-500 in the amount of $102,600 and attorney's fees of $34,020." [1]

## II.  ANALYSIS

On appeal, Francis Hospitality and Delta contend the circuit court "erred in finding the defendants liable for tortious interference with a contractual right" and "in finding the defendants liable for business conspiracy" in violation of Code § 18.2-499 and -500. [2]  Among other grounds, the appellants argue that they cannot tortiously interfere with their own contract.  We find this ground dispositive of their appeal.

Since first recognizing a cause of action for tortious interference with a contract in *Chaves v. Johnson*, 230 Va. 112 (1985), we have made clear that only a party *outside* the contractual relationship with the plaintiff is subject to liability as an interferor.

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) *between another and a third person by inducing or otherwise causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Id.* at 120 (quoting Restatement (Second) of Torts § 766 (1977) (emphasis added)).  We have explained that "tortious interference with contract and tortious interference with business expectancy are intentional torts predicated on the *common law duty to refrain from interfering*

---

[1] In addition to Francis Hospitality and Delta, the complaint named Malcomb David Francis and Charles P. Brissman as defendants.  At the bench trial, the evidence was struck as to the claims against Brissman. Subsequently, the circuit court found that Francis was not "personally liable."  Both individuals were dismissed with prejudice in the final order.  In addition, a third-party complaint and third-party counterclaim were severed from this action.

[2] The appellants also assigned error to the circuit court's rulings that Read Properties "was an intended third party beneficiary" of the lease agreement and that Francis Hospitality and Delta "were liable for breach of contract" in failing to pay the leasing fees to Read Properties. We refused those assignments of error.

5

*with another's contractual and business relationships*," which duty "does not arise from the contract itself." *Dunlap v. Cottman Transmission Sys.*, 287 Va. 207, 218 (2014) (emphasis added).[3]

Therefore, as we stated unequivocally in *Fox v. Deese*, 234 Va. 412, 427 (1987), "[a] person cannot intentionally interfere with his own contract." For example, in *Fox*, where the plaintiff alleged that defendant, an employee of the City of Richmond, intentionally interfered with the plaintiff's contract with the City, we held that defendant could only be held liable for tortious interference with the contract if he was acting outside the scope of his employment with the City. Otherwise, "the City's contract was also his contract, and he could not interfere with it." *Id.*[4]

Similarly, Francis Hospitality and Delta cannot be held liable for tortiously interfering with their own contract. Read Properties alleges, and the circuit court found, that Francis

---

[3] We have stated that "[t]he necessary elements to establish a prima facie case [of tortious interference with a contractual relationship or business expectancy] are: '(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.'" *Dunlap*, 287 Va. at 216 (citation omitted).

[4] *See also Beco Const. Co. v. J-U-B Eng'rs, Inc.*, 184 P.3d 844, 849 (Idaho 2008) (stating that "[s]ince a party cannot interfere with its own contract, it follows that an action for intentional interference with contract can only lie against . . . . a stranger to the contract with which the defendant allegedly interfered and to the business relationship giving rise to the contract"); *Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) (stating that "[b]y definition [of tortious interference with contract], the person who induces the breach cannot be a contracting party"); *Houser v. Redmond*, 586 P.2d 482, 484 (Wash. 1978) (stating that "a party to a contract cannot be held liable in tort for interference with that contract" and "the remedy available against a party to the contract for wrongful action on its part . . . is an action for breach of contract"); *Board of Trustees v. Holso*, 584 P.2d 1009, 1017 (Wyo. 1978) (noting that theories of intentional interference with prospective advantage, contractual relations, and business expectancy "*do not apply to actions between parties to an existing contract*—they lie only against outsiders who interfere with the contractual expectancies of others") (emphasis in original).

6

Hospitality and Delta breached the lease agreement by failing to pay the leasing fees in accordance with the agreement under which Read Properties was an intended third-party beneficiary. To support its claims of tortious interference against Francis Hospitality and Delta, Read Properties alleges that Francis Hospitality and Delta intentionally interfered with Read Properties' right to receive the leasing fees under this same agreement by entering into the third amendment to the lease agreement terminating the payment of leasing fees to Read Properties. An action for tortious interference with a contract or business expectancy, however, does not lie against parties to the contract, but only lies against those outside the contractual relationship, i.e., strangers to the contract or business expectancy. Accordingly, Francis Hospitality and Delta cannot be held liable for tortious interference with the lease agreement and the circuit court erred by ruling in favor of Read Properties on Count II asserting these claims.

Read Properties' claims against Francis Hospitality and Delta for statutory business conspiracy pursuant to Code §§ 18.2-499 and -500 are predicated on its claims against Francis Hospitality and Delta for tortious interference with the lease agreement. *See Dunlap*, 287 Va. at 215 (holding that a cause of action for tortious interference with contract may qualify as the requisite unlawful act to proceed on a statutory business conspiracy claim under Code §§ 18.2-499 and -500).[5] Because Read Properties' underlying claims of tortious interference with

_____

[5] Code § 18.2-500(A) states that "[a]ny person who shall be injured in his reputation, trade, business or profession by reason of a violation of [Code] § 18.2-499, may sue therefor and recover three-fold the damages by him sustained, and the costs of suit, including a reasonable fee to plaintiff's counsel." Code § 18.2-499(A) imposes criminal liability on

> [a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act.

contract against Francis Hospitality and Delta fail, its claims of statutory business conspiracy under Code §§ 18.2-499 and -500 also must fail. Accordingly, the circuit court erred in ruling that appellants were liable under Count III of the complaint and in awarding Read Properties three-fold damages and attorney's fees pursuant to Code § 18.2-500.

## III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court awarding three-fold damages and attorney's fees to Read Properties. The circuit court's ruling that Francis Hospitality and Delta are jointly liable for the remaining leasing fees of $34,020 due under the lease agreement remains undisturbed. Therefore, we will enter final judgment for Read Properties in the amount of $34,020.

*Reversed and final judgment*.

---

"To recover in an action under these statutes, a plaintiff must establish: '(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business[;] and (2) resulting damage to plaintiff.'" *Dunlap*, 287 Va. at 214 (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984)). Furthermore, such action will only lie if plaintiff sustains damages as a result of an underlying unlawful act. *Id.* at 215-16.