**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1423

L-3 COMMUNICATIONS CORPORATION; L-3 APPLIED TECHNOLOGIES, INC.,

Plaintiffs - Appellants,

v.

SERCO, INC.,

Defendant - Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:15−cv−00701−TSE−JFA)

Argued: March 20, 2019                    Decided: June 10, 2019

Before KEENAN and DIAZ, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by published opinion. Judge Keenan wrote the opinion, in which Judge Diaz and Senior Judge Duncan joined.

**ARGUED:** Joshua Nicholas Drian, MANATT PHELPS & PHILLIPS, LLP, Washington, D.C., for Appellants. John David Wilburn, MCGUIREWOODS LLP, Tysons Corner, Virginia, for Appellee. **ON BRIEF:** Nigel L. Wilkinson, Andrew Zimmitti, MANATT PHELPS & PHILLIPS, LLP, Washington, D.C.; Steven L. Levitt, Karen L. Weiss, LEVITT LLP, Mineola, New York, for Appellants. Ryan D. Frei, Matthew A. Fitzgerald, Ashley P. Peterson, MCGUIREWOODS LLP, Richmond, Virginia; Amy Miller, Martin J. Amundson, BUCHANAN INGERSOLL & ROONEY

PC, Washington, D.C., for Appellee.

BARBARA MILANO KEENAN, Circuit Judge:

This case comes before us for the second time. Plaintiffs L-3 Communications Corporation and L-3 Applied Technologies, Inc. (L-3 ATI) (collectively, the plaintiffs) appeal from the district court's award of summary judgment to Serco, Inc. in the plaintiffs' action alleging numerous claims arising out of a failed business relationship. The plaintiffs contend that Serco conspired with another company, Jaxon Engineering & Maintenance, Inc. (Jaxon), to "rig" a bidding process related to work for the United States Air Force Space Command (the Air Force), thereby interfering with the plaintiffs' reasonable business expectancy in that work. The plaintiffs assert that Serco's conduct amounted to tortious interference with the plaintiffs' business expectancy, common law conspiracy and statutory business conspiracy under Virginia law, and violations of the Colorado Organized Crime Control Act (COCCA), Colo. Rev. Stat. § 18-17-104.

Upon our review, we conclude that the district court properly awarded summary judgment to Serco on the claims of tortious interference with business expectancy, because those claims fail as a matter of law. However, for the reasons discussed below, we conclude that the district court erred in awarding summary judgment to Serco with respect to the plaintiffs' conspiracy claims and COCCA claims.[1] We therefore affirm in part, and vacate in part, the district court's judgment and remand for further proceedings.

_____

[1] The plaintiffs also alleged claims of tortious interference with non-disclosure agreements and negligent misrepresentation. We have reviewed the record and conclude that the plaintiffs failed to preserve their challenges to the dismissal of these claims in the district court. Thus, any challenges related to these claims have been forfeited and we do
(Continued)

I.

A detailed factual background of this case is included in our prior opinion. *L-3 Commc'ns Corp. v. Serco, Inc.*, 673 F. App'x 284, 285-87 (4th Cir. 2016). We restate those facts as necessary here. In 2004, the Air Force awarded an indefinite delivery indefinite quantity contract to Serco (the prime contract). The prime contract required that Serco provide testing and upgrading services to certain Air Force facilities to protect those sites from high altitude electromagnetic pulse (HEMP) events.

Under the prime contract, the Air Force periodically would provide Serco with a statement of work that outlined the requirements for a specific HEMP-related project. If Serco could not complete the work itself, Serco would issue a request for proposal (RFP), which invited certain qualified companies to bid on the identified work as a subcontractor.

A few months after being awarded the prime contract, Serco entered into a subcontract for HEMP-related work (the subcontract) with the Titan Corporation, a predecessor to plaintiff L-3 ATI.[2] The subcontract provided, in relevant part, that

---

not further consider them. *See Pornomo v. United States*, 814 F.3d 681, 686 (4th Cir. 2016).

[2] The Titan Corporation later changed its name to "L-3 Services" and the subcontract was modified accordingly. In 2011, L-3 Services and L-3 ATI entered into a contribution agreement whereby all "assets" of L-3 Services' Applied Technologies Division, which was responsible for HEMP-related work, were transferred to L-3 ATI. L-3 ATI, in turn, is a wholly owned indirect subsidiary of L-3 Communications. As in (Continued)

"[Serco] has no obligation to issue and there is no guaranty to [the plaintiffs] that [they] will receive any work under the terms of this Subcontract." Instead, the plaintiffs still were required to submit proposals to bid on HEMP-related work, which was issued in the form of individual task orders.

Between December 2004 and June 2009, Serco awarded every task order issued under the prime contract to the plaintiffs or their predecessors. And although Serco was required by the prime contract to select subcontractors on a competitive basis to the maximum extent practicable, the plaintiffs were the only subcontractors that Serco considered for HEMP-related work during this time period.

In July 2009, Serco began to award HEMP-related task orders to another company, Jaxon, which was formed by a longtime L-3 employee. The plaintiffs allege that Jaxon was not qualified to perform this work, and that Serco's decision to award HEMP-related work to Jaxon was based on a "fraudulent scheme" between Serco and Jaxon in which Serco actively prevented the plaintiffs from fairly competing for work under the task orders. The plaintiffs allege that Serco facilitated this scheme (1) by encouraging and assisting former L-3 employees, now working for Jaxon, to use the plaintiffs' confidential information when bidding on HEMP-related projects for Jaxon, and (2) by providing Jaxon with inside information about government costs and requirements for such projects. Based on this purported scheme, the plaintiffs claim that

our prior opinion, references to "the plaintiffs" include L-3 ATI, L-3 Communications, and those companies' predecessors in interest. *See L-3 Commc'ns Corp.*, 673 F. App'x at 286.

5

between July 2009 and November 2014, Serco awarded 32 HEMP-related task orders to Jaxon that otherwise would have been awarded to the plaintiffs. During that same period, Serco awarded 11 other HEMP-related task orders to the plaintiffs and 13 such task orders to other contractors.

In June 2015, the plaintiffs initiated the present action. The plaintiffs asserted claims of: (1) tortious interference with the plaintiffs' business expectancy in HEMP-related task orders from July 2009 to the time of filing (Counts 1-34) (the tortious interference claims); (2) aiding and abetting Jaxon to tortiously interfere with this business expectancy (Counts 35-68) (the aiding and abetting claims); (3) civil conspiracy in violation of Virginia common law, and statutory business conspiracy in violation of Virginia Code §§ 18.2-499 and 18.2-500 (Counts 69-70) (the conspiracy claims); and (4) violations of the Colorado Organized Crime Control Act, Colo. Rev. Stat. § 18-17-104 (Counts 71-73) (the COCCA claims).

The district court initially dismissed the plaintiffs' action under Federal Rule of Civil Procedure 12(b)(1), holding that the plaintiffs lacked standing because they did not have a business expectancy in the losses alleged. We reversed, concluding that the plaintiffs had standing, and that the question whether the plaintiffs plausibly had alleged a business expectancy was one properly considered under Federal Rule of Civil Procedure 12(b)(6) or on a motion for summary judgment. *See L-3 Commc'ns Corp.*, 673 F. App'x at 285.

Following extensive discovery on remand, Serco filed a motion for summary judgment, which the district court granted. The court concluded that although the

6

plaintiffs' tortious interference and aiding and abetting claims were timely, the plaintiffs could not establish a valid business expectancy in any task order because the subcontract expressly disclaimed any expectancy. The court also determined that the plaintiffs could not rely on their past course of dealing to establish a business expectancy, because such course of dealing did not arise independently of the subcontract.

With respect to the plaintiffs' conspiracy claims, the court held that those claims were time-barred under Virginia's five-year statute of limitations, based on the court's finding that the plaintiffs initially suffered an injury in 2008 resulting from the alleged conspiracy. Alternatively, the court held that the conspiracy claims failed as a matter of law because the plaintiffs could not establish a valid business expectancy in any task order. The court also concluded that the plaintiffs' COCCA claims were time-barred. The plaintiffs now appeal.

## II.

The plaintiffs contend that the district court erred in granting summary judgment on their (1) tortious interference and aiding and abetting claims; (2) conspiracy claims; and (3) COCCA claims. We consider each set of claims in turn.

We review the district court's award of summary judgment de novo. *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

7

We first consider the plaintiffs' tortious interference claims and aiding and abetting claims.[3] The plaintiffs maintain that because Serco conspired with Jaxon to award Jaxon HEMP-related task orders, Serco also may be held independently liable for tortious interference. We disagree.

Virginia has long recognized a cause of action for tortious interference with contract rights or business expectancies. *See Chaves v. Johnson*, 335 S.E.2d 97, 102 (Va. 1985); *Glass v. Glass*, 321 S.E.2d 69, 76-77 (Va. 1984). These intentional tort claims are predicated on the "common law duty to refrain from interfering with *another's* contractual and business relationships." *Francis Hosp., Inc. v. Read Props., LLC*, 820 S.E.2d 607, 610 (Va. 2018) (emphasis added) (quoting *Dunlap v. Cottman Transmission Sys.*, 754 S.E.2d 313, 319 (Va. 2014)). Thus, these torts subject to liability an outsider who induces or causes one of the parties to the business relationship not to perform as reasonably expected. *See Chaves*, 335 S.E.2d at 102. As recently explained by the Supreme Court of Virginia, "[a]n action for tortious interference with a contract or business expectancy . . . does not lie against parties to the contract, but only lies against those outside the contractual relationship, i.e., strangers to the contract or business expectancy." *Francis Hosp.*, 820 S.E.2d at 610. Accordingly, only a party *outside* the contractual or business-expectancy relationship with the plaintiff may be held liable as an

---

[3] The district court determined that Virginia law governs the plaintiffs' tortious interference and aiding and abetting claims. Neither party disputes that conclusion on appeal.

8

interferor.  *Id.*; *see also Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987) ("A person cannot intentionally interfere with his own contract.").

Under Virginia's "third-party rule," however, a party to a business relationship may be held liable for *conspiracy* to tortiously interfere with its own business relationship.  The third-party rule recognizes "an action for tort *in the nature of a conspiracy*" against all parties who "unite" to interfere with a business relationship. *Worrie v. Boze*, 95 S.E.2d 192, 199 (Va. 1956) (emphasis added), *abrogated on other grounds by Station #2 v. Lynch*, 695 S.E.2d 537 (Va. 2010); *see also CaterCorp, Inc. v. Catering Concepts, Inc.*, 431 S.E.2d 277, 281-82 (Va. 1993) ("The common law recognizes a cause of action against those who conspire to induce the breach of a contract, even when one of the alleged conspirators is a party to the contract."). Thus, the third-party rule provides a cause of action in conspiracy against one who cannot be held directly liable for tortiously interfering with his own business relationship, but nonetheless encourages or induces an outsider to do so.  *See Worrie*, 95 S.E.2d at 199.

This Virginia case law reveals a careful distinction in the different causes of action that can be asserted against parties allegedly involved in interfering with a business relationship.  A stranger to the contractual or business relationship is subject to liability for a claim of tortious interference with a contract or business expectancy, as well as for conspiring to accomplish such interference. *See Chaves*, 335 S.E.2d at 102; *Worrie*, 95 S.E.2d at 199.  In contrast, a party to the contract or business relationship at issue may be held liable only for the act of conspiracy, when that party combines with an outsider to achieve the alleged interference.  *See Francis Hosp.*, 820 S.E.2d at 610-11; *CaterCorp,*

9

*Inc.*, 431 S.E.2d at 281-82. Virginia's courts regularly have adhered to this distinction. *See, e.g.*, *Comm. Bus. Sys. v. Halifax Corp.*, 484 S.E.2d 892, 893-94 (Va. 1997) (involving a plaintiff's claims for conspiracy against its contractual counterparty and for tortious interference against the plaintiff's competitor, a third-party interferor); *CaterCorp, Inc.*, 431 S.E.2d at 281-82 (discussing the "third-party rule" in connection with the plaintiff's claims of common-law conspiracy and statutory business conspiracy); *Elliott v. Shore Stop, Inc.*, 384 S.E.2d 752, 755 (Va. 1989) (allowing the plaintiff's claim that her employer and a third-party conspired to interfere with her employment contract to proceed); *Fox*, 362 S.E.2d at 708 (distinguishing between a plaintiff's claims for tortious interference, which could not be asserted against a party to the contractual relationship at issue, and a claim of conspiracy to tortiously interfere, which could proceed).

As noted above, the plaintiffs' tortious interference claims are based on their allegations that Serco *directly* interfered with the plaintiffs' business expectancy in HEMP-related task orders. And it is undisputed that Serco, as the prime contractor responsible for issuing such task orders, was a party to those orders. Thus, the plaintiffs' tortious interference claims against Serco fail as a matter of law, because those claims have been asserted against a party to the contract or expectancy. *See Francis Hosp.*, 820 S.E.2d at 610. Likewise, the plaintiffs' aiding and abetting claims, which simply

10

repackage the plaintiffs' tortious interference claims, fail for the same reason.[4] We therefore conclude that the district court properly awarded summary judgment in favor of Serco on the plaintiffs' tortious interference and aiding and abetting claims (Counts 1 through 68).

B.

We next address the plaintiffs' conspiracy claims. To recover in a civil conspiracy action both under the common law and under Virginia Code § 18.2-499, a plaintiff must establish that at least one member of the conspiracy, in agreement with another member, committed an act that was itself wrongful or tortious, and that such act damaged the plaintiff. *See Gelber v. Glock*, 800 S.E.2d 800, 821 (Va. 2017); *CaterCorp, Inc.*, 431 S.E.2d at 281-82. There is no requirement that the party sued for civil conspiracy be the actual tortfeasor. Rather, so long as at least one co-conspirator may be held liable for the underlying tortious act, the plaintiff can hold the other members of the conspiracy liable for any resulting injury. *See Gelber*, 800 S.E.2d at 821; *cf. Francis Hosp.*, 820 S.E.2d at 611 (concluding that a plaintiff's claims of statutory business conspiracy could not proceed because none of the alleged co-conspirators could be held liable for the underlying unlawful act); *La Bella Dona Skin Care, Inc. v. Belle Femme Enterps., LLC*, 805 S.E.2d 399, 406 (Va. 2017) (holding that a claim of fraudulent conveyance cannot serve as the predicate act for a charge of civil conspiracy because such a claim does not impose liability on any party).

---

[4] We also observe that Virginia's courts have not recognized an independent cause of action for aiding and abetting such alleged acts of tortious interference.

11

The district court concluded that the plaintiffs' conspiracy claims were time-barred and, alternatively, that the claims failed because the plaintiffs could not establish a valid business expectancy in any task orders. The plaintiffs challenge both holdings, which we address in turn.

1.

The plaintiffs first argue that the district court erred in concluding that their conspiracy claims are time-barred. The plaintiffs contend that because they were injured by the alleged conspiracy when Serco began awarding HEMP-related task orders to Jaxon in July 2009, the plaintiffs' conspiracy claims could not have accrued until that time. Relying on Virginia's five-year statute of limitations for injury to property, Va. Code § 8.01-243(B), the plaintiffs argue that the limitations period governing those conspiracy claims did not expire until at least July 2014, almost two months after the plaintiffs filed their initial action in Virginia state court.[5]

To bring a civil action for common law conspiracy or statutory business conspiracy, the plaintiffs were required to show that that they suffered damage "as a result of an act that is itself wrongful or tortious." *Dunlap*, 754 S.E.2d at 317. The conspiracy itself is not actionable. *Id.* Thus, a cause of action for either type of conspiracy does not accrue until the plaintiff suffers an injury sufficient to give rise to the underlying tort claim. *See Detrick v. Panalpina*, 108 F.3d 529, 543 (4th Cir. 1997). And

---

[5] Under Virginia law, the filing of the state court action tolled the limitations period for these conspiracy claims. *See* Va. Code § 8.01-380.

12

to prove such an injury, a plaintiff necessarily is required to prove every element of the underlying tort. *See Almy v. Grisham*, 639 S.E.2d 182, 188-89 (Va. 2007).

The plaintiffs' various conspiracy claims are predicated on their allegations that Serco and Jaxon conspired to tortiously interfere with the plaintiffs' business expectancy in HEMP-related task orders. Such allegations of tortious interference require as an element proof of "intentional interference inducing or *causing a breach or termination* of the relationship or expectancy." *Dunlap*, 754 S.E.2d at 316 (emphasis added).

Here, the plaintiffs did not suffer any injury supporting a claim for tortious interference until Serco awarded a HEMP-related task order to Jaxon. Therefore, because the plaintiffs could not plead the essential elements of a tortious interference claim until July 2009, they likewise could not establish a common law or statutory business conspiracy claim against Serco until that date. *See Almy*, 639 S.E.2d at 189.

We find unpersuasive Serco's contention that the plaintiffs were injured by the alleged conspiracy as early as 2007 or 2008, when Serco allegedly reached an agreement with the plaintiffs' employees to steal the plaintiffs' confidential information and create Jaxon. Although those actions may have injured the plaintiffs with respect to agreements they had with their former employees, the plaintiffs' alleged expectancy in HEMP-related task orders was unaffected. Similarly, Serco's decision not to solicit a bid from the plaintiffs for a HEMP-related task order in March 2009 did not represent a completed act of interference with the plaintiffs' expectancy. Until the relevant task orders were awarded, Serco retained the discretion to solicit additional bids or even decline to award the task order to any company.

13

Accordingly, we conclude that all the plaintiffs' conspiracy claims did not begin to accrue until July 2009, when the first HEMP-related task order was awarded to Jaxon. Because the plaintiffs initially brought their claims of conspiracy within five years of that time, the district court erred in determining that the plaintiffs' conspiracy claims were time-barred.

2.

The plaintiffs also challenge the district court's alternative holding that, as a matter of law, the plaintiffs failed to establish a valid business expectancy in the HEMP-related task orders. In the plaintiffs' view, a jury could conclude that the plaintiffs reasonably could have expected to receive future task orders, given the parties' multi-year "course of dealing" in which Serco awarded every HEMP-related task order to the plaintiffs. Serco, however, responds that the plaintiffs could not have had a business expectancy in the HEMP-related task orders, because those task orders were issued under the subcontract, which expressly disclaimed any guarantee of future work.[6] We disagree with Serco's argument.

---

[6] We reject Serco's separate argument that any causes of action based on an expectancy in HEMP-related task orders would belong only to L-3 Services, which is not a named plaintiff in this case. The contribution agreement between L-3 Services and L-3 ATI transferred to L-3 ATI "all of [L-3 Services'] right, title and interest, legal and equitable, in and to all of the Assets [related to the Applied Technologies Division] to have, hold and use forever." This type of comprehensive language is sufficient under New York law, which governs the contribution agreement, to demonstrate that the parties intended to include in the transfer any related and accrued causes of action. *See Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank*, 57 F.3d 146, 151-52 (2d Cir. 1995); *Commonwealth of Pa. Pub. Sch. Emps. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 35 N.E.3d 481, 486 (N.Y. 2015); *see also* N.Y. Gen. Oblig. Law § 13-101 (explaining (Continued)

14

As we have explained, to hold Serco liable for conspiracy to interfere with the plaintiffs' business expectancy, the plaintiffs were required to establish that such tortious interference actually occurred. *See Dunlap*, 754 S.E.2d at 319; *Almy*, 639 S.E.2d at 188-89. To succeed on a claim of tortious interference, a plaintiff must show "(1) the existence of a valid contractual relationship or business expectancy; (2) the putative interferer's knowledge of the relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143 (4th Cir. 2014) (citation omitted) (applying Virginia law). The district court's analysis and the parties' arguments on appeal focus on the first of these elements, whether the plaintiffs could demonstrate a valid business expectancy in the HEMP-related task orders awarded to Jaxon.

To establish a valid business expectancy, a plaintiff must show a "'probability' of future economic benefit," which is a fact-intensive inquiry. *Halifax Corp.*, 484 S.E.2d at 897. A mere "possibility" that a future economic benefit will accrue is insufficient. *Id.* And although the plaintiff may rely on "any credible evidence" to demonstrate such a probability, the offered proof must meet an objective standard. *Id.* at 896-97 "[M]ere proof of a plaintiff's belief and hope that a business relationship will continue is

---

that any claim can be transferred subject to certain exceptions not relevant here). Accordingly, we conclude that L-3 ATI, as the "successor in interest" to L-3 Services, is the proper party to assert any cause of action about the HEMP-related task orders.

inadequate to sustain" a claim of tortious interference with a business expectancy. *Id.* at 897.

In the present case, the plaintiffs rely on their long-standing business relationship with Serco to establish that but for Serco's acts assisting Jaxon, there was a reasonable probability the plaintiffs would have been awarded the HEMP-related task orders that Jaxon received. The record shows that between 2004 and June 2009, Serco awarded every HEMP-related task order to the plaintiffs. Additionally, the plaintiffs have offered evidence that they were the only entities that Serco even considered for HEMP-related work before 2009.

In submissions to the Air Force regarding such work, Serco stated that L-3 was the "preferred supplier of the HEMP efforts due to" the plaintiffs' certifications and trained employees. Also, the record lacks any evidence that either Serco or the Air Force was dissatisfied with the quality of the plaintiffs' work. Thus, as a purely factual matter, the significant business relationship between the two entities involving HEMP-related projects is evidence supporting a conclusion that the plaintiffs reasonably expected to be awarded future HEMP-related task orders. *See Am. Bus. Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1134 (8th Cir. 1986) ("A regular course of similar prior dealings may suggest a valid business expectancy."); *Conoco Inc. v. Inman Oil Co, Inc.*, 774 F.2d 895, 907 (8th Cir. 1985) (concluding that a "20-year customer relationship" created "a protectable business expectancy").

The district court erred in concluding that the plaintiffs could not rely on this course of dealing with Serco because that relationship arose only from the parties'

16

subcontract. Although the subcontract provided standard terms and conditions that would apply to any future award of task orders, that subcontract did not "govern[] the parties' relationship" in bidding for and awarding task orders. Each RFP and task order, issued and bid on separately, constituted a new contract between the parties. *See Coast Prof'l, Inv. v. United States, Fin. Mgmt. Sys, Inc.*, 828 F.3d 1349, 1356 (Fed. Cir. 2016); *see also Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016). Thus, the plaintiffs' expectancy was in the issuance of each new task order, separate and apart from the subcontract. Accordingly, evidence of a course of dealing between the plaintiffs and Serco was relevant to the issue whether the plaintiffs would have realized their expectancy in the new task orders. *See Halifax Corp.*, 484 S.E.2d at 897.

On remand, the fact finder should consider this course of dealing in the context of the parties' entire contractual relationship, which in the present case included both the task orders and the subcontract. *See id.* at 896-97 (considering evidence of a plaintiff's financial condition, course-of-dealing, and interaction with the defendant to find "any credible evidence" that a future expectancy would be realized). Here, the subcontract expressly stated that Serco had "no obligation to issue and there is no guaranty to [the plaintiffs] that [they] will receive any work under this Subcontract." The RFP's for HEMP-related task orders similarly explained that Serco retained the sole discretion to "make one award, multiple awards, or no award, depending on the best interest of Serco," and that "Serco is not obligated . . . to enter into [an agreement] or any other arrangement with any offerer." A fact finder could determine that these disclaimers weighed in some

17

degree against the plaintiffs having a reasonable expectancy in future HEMP-related work.

Also relevant on remand to the question of reasonable business expectancy is the fact that Serco was required by the prime contract to select subcontractors on a competitive basis to the maximum extent practicable. And even when Serco recommended that a certain subcontractor be awarded work under a particular task order, it appears that the Air Force retained the authority to reject that recommendation. Thus, the very nature of the federal government's contracting and subcontracting process at issue in this case may make it more difficult as a factual matter for subcontractors, who are bound by the terms of a prime contract with the government, to demonstrate an objective expectation regarding future task orders. *See Am. Fed'n of Labor & Congress of Indus. Orgs. v. Kahn*, 618 F.2d 784, 794 (D.C. Cir. 1979) ("[N]o one has a right to a Government contract.").

But it is not our role to weigh the evidence or these competing considerations. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). Based on the record before us, we conclude that the evidence that the plaintiffs were the sole providers of HEMP-related services to Serco for several years was sufficient to create a dispute of material fact regarding whether the plaintiffs had a valid business expectancy in the task orders awarded to Jaxon. Accordingly, we hold that the district court erred in its alternative ruling awarding summary judgment to Serco on the plaintiffs' conspiracy claims (Counts 69 and 70).

C.

18

We next turn to address the plaintiffs' COCCA claims. The plaintiffs argue that the district court erred in applying a two-year, rather than a five-year, statute of limitations to those claims. We disagree with the plaintiffs' contention.

The COCCA statute does not include a limitations period. *See* Colo. Rev. Stat. § 18-17-104. Therefore, initially, we must determine whether the law of Virginia or the law of Colorado provides the applicable statute of limitations governing those claims.

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Under Virginia law, statutes of limitations are considered procedural rules governed by the law of the forum state. *See Barry v. Donnelly*, 781 F.2d 1040, 1042 n.3 (4th Cir. 1986). Therefore, in this case, Virginia law determines both the applicable statute of limitations for the COCCA claims and the time at which those claims accrued under that limitations period. *See Brown v. Am. Broad. Co., Inc.*, 704 F.2d 1296, 1299 (4th Cir. 1983).

Under Virginia law, "*every action for damages resulting from fraud* shall be brought within two years after the cause of action accrues." Va. Code § 8.01-243(A) (emphasis added). If the action is not based on fraud, Virginia applies a two- or five-year limitations period, depending on whether the plaintiff suffered a personal injury or an injury to property. *See id.* §§ 8.01-243(A), (B). Notably, the limitations period for fraud claims is not determined by the type of injury that the plaintiff sustained, but rather by the "nature of the cause of action at issue." *Parker-Smith v. Sto Corp.*, 551 S.E.2d 615, 619 (Va. 2001). If the plaintiffs' COCCA claims sound in fraud, the two-year statute of limitations applies. *See* Va. Code § 8.01-243(A). Only if the claims do not sound in

19

fraud do we consider the type of injury that the plaintiffs sustained. *See Bader v. Cent. Fid. Bank*, 427 S.E.2d 184, 185-87 (Va. 1993) (deciding whether the plaintiff's cause of action was based on fraud before considering whether that action involved an injury to the plaintiff's person or property).

In this case, we agree with the district court that the plaintiffs' COCCA claims are based on an alleged "fraudulent scheme" between Serco and Jaxon. The plaintiffs claim that the two companies orchestrated "a complicated and prolonged campaign of fraud and deceit," and engaged in a "wide-ranging scheme to defraud the [Air Force] and to fraudulently obtain task orders that would have otherwise gone to L-3." And the predicate acts pleaded in support of the plaintiffs' COCCA claims are acts of federal mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. Given the repeated allegations of fraudulent conduct, the plaintiffs' COCCA claims plainly sound in fraud. *Cf. Bader*, 427 S.E.2d at 186 (concluding that a claim could not be subject to the statute of limitations for fraudulent actions because there were no allegations of fraudulent acts). Accordingly, we hold that Virginia's two-year statute of limitations applies to the plaintiffs' COCCA claims. Va. Code § 8.01-243(A).

Nonetheless, the plaintiffs should have been afforded an opportunity to prove whether they suffered any distinct injuries during the applicable two-year period. Under Virginia law, "if the wrongful acts [at issue] are not continuous and occur only at intervals, each occurrence inflicts a new injury and gives rise to a new and separate cause of action." *Am. Physical Therapy Ass'n v. Fed'n of State Bds. of Physical Therapy*, 628 S.E.2d 928, 929 (Va. 2006) (internal quotation marks and citation omitted).

20

Here, the plaintiffs have alleged separate acts of mail and wire fraud underlying the COCCA claims related to the award of each task order, some of which occurred in 2012, 2013, and 2014. Accordingly, although we affirm the district court's decision holding that a two-year statute of limitations applies to the plaintiffs' COCCA claims, we remand for the district court to determine as a factual matter the particular limitations period for each of the COCCA claims, and to determine whether the plaintiffs can recover for any independent injuries that may have occurred during those periods.[7] *See Hampton Roads Sanitation Dist. v. McDonnell*, 360 S.E.2d 841, 843-44 (Va. 1987) (recognizing that a plaintiff may only recover for damages sustained during the applicable limitations period).

### III.

In sum, we vacate the district court's award of summary judgment in favor of Serco with respect to the plaintiffs' conspiracy claims (Counts 69 and 70) and COCCA claims (Counts 71 through 73), and we affirm the balance of the court's judgment. We remand the case for further proceedings consistent with the principles expressed in this opinion.

---

[7] In the event that the plaintiffs establish an injury occurring during the applicable limitations period, the district court must also consider on remand whether Serco's alleged conduct in this case amounted to a violation of the COCCA statute. Because the district court did not reach the merits of the plaintiffs' COCCA claims, we decline to do so in the first instance. *Graham v. Gagnon*, 831 F.3d 176, 189 (4th Cir. 2016).

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*