PRESENT:  All the Justices

KATHARINE ALMY

v.  Record No. 052378   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                         January 12, 2007
JOHN GRISHAM, JR., ET AL.


             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                   William R. Shelton, Judge Designate

     In this appeal involving an action for intentional

infliction of emotional distress and a related civil conspiracy

claim, we consider whether the circuit court erred in sustaining

the defendants' demurrers.  As part of our consideration, we

decide the issue of first impression whether a civil claim for

conspiracy to intentionally inflict emotional distress will be

recognized as a cause of action in this Commonwealth.

                   I. MATERIAL FACTS AND PROCEEDINGS

     In February 2004, Katharine Almy filed a motion for

judgment against John Grisham, Jr., Alan Swanson, Donna Swanson,

David Liebman, and Cina L. Wong (collectively, defendants),

alleging claims including intentional infliction of emotional

distress and conspiracy to intentionally inflict emotional

distress.  Almy had asserted similar claims in a previous

action, which was dismissed without prejudice on her motion for

nonsuit.

     The defendants each filed demurrers asserting that Almy had

failed to state a cause of action.  At a hearing on the

1

demurrers, defendant Grisham asked that the circuit court take judicial notice of the deposition testimony of Dr. Stephen Alexander, a licensed professional counselor and potential witness in the case, who had given the deposition testimony in the previous action.  Almy did not object to Grisham's request.

After considering the parties' arguments, the circuit court issued a letter opinion stating:

> [T]he intentional infliction of emotional distress and conspiracy to intentionally inflict emotional distress claims will not survive demurrer, based on the depositions which are part of the record in this case.  The depositions[] allow[] the court to evaluate and decide the merits of claims set forth in the motion for judgment.[1]

In a final order incorporating its letter opinion, the circuit court sustained the defendants' demurrers and dismissed the action with prejudice.

Almy's motion for judgment recounted a series of events that allegedly occurred between 1996 and 1999.  Beginning in 1996 and continuing through 1998, Donna Swanson (Donna) received several anonymous, hand-written letters that made various accusations, including allegations of marital infidelity on the part of Alan Swanson (Alan), Donna's husband.  In 1998, Grisham also received an anonymous, hand-written letter.  According to Almy's allegations, Grisham and the Swansons decided together

---

[1] Although the circuit court did not identify which depositions it was considering, Dr. Alexander's deposition was the only deposition before the court.

2

that they should determine the source of the anonymous letters, suspecting that Almy was the author.  Grisham allegedly stated during a tape-recorded conversation that he "really, really wanted to make Ms. Almy suffer for writing those letters."

As part of their effort to determine if Almy was the author of the letters, Grisham and the Swansons contacted Liebman, a handwriting analyst.  Liebman asked to see the anonymous letters, along with known samples of Almy's handwriting.  Grisham produced for Liebman's analysis a "thank-you" note written by Almy and a form Almy had completed when she registered her daughter to play baseball in a league in which Grisham was a coach.  Liebman later requested additional samples of Almy's handwriting.

To provide Liebman with the requested additional samples, Grisham and Alan allegedly agreed to obtain documents bearing Almy's handwriting from her children's files at St. Anne's-Belfield School (St. Anne's).  Grisham served on the board of directors at St. Anne's, and Alan was a teacher there.  Alan, without permission from anyone at St. Anne's, allegedly obtained from the school files an enrollment and medical release form that Almy had completed, which was marked "Strictly Confidential" and contained confidential and personal information.  Alan provided a copy of the document to Grisham, who allegedly sent it to Liebman.

3

Wong, a handwriting examiner who worked with Liebman, also analyzed the submitted samples. Liebman and Wong concluded in a written report (Liebman report) that it was possible Almy had written the letters, and that she appeared to have addressed the envelopes containing the letters. Almy alleged that Grisham, Liebman, and Wong collaborated regarding the desired contents and phrasing of the Liebman report.

Grisham and the Swansons next met with Grisham's attorney, John Zunka. Grisham allegedly told Zunka that the Liebman report concluded that Almy had written the anonymous letters. Based on this information, Zunka advised Grisham to contact the local Commonwealth's Attorney, James Camblos, to initiate criminal proceedings against Almy.

Grisham and the Swansons met with Camblos and allegedly told him that their handwriting experts concluded that Almy had written some of the anonymous letters and had addressed the envelopes containing those letters. Camblos contacted Detective Thomas Grimes of the Albemarle County Police Department, who arranged a meeting with the Swansons. The Swansons provided Grimes with copies of the anonymous letters and told him that they thought Almy was the author.

In August 1998, Grimes confronted Almy at her residence and asked her if she had written the anonymous letters. After Almy denied writing the letters, Grimes informed Almy that she was

4

not under arrest but that he "want[ed] the letters to stop." Almy alleged that Grimes was "rude and demeaning" during the visit, causing her to cry and become upset.

Almy asserted that as a result of Grimes' visit in August 1998, she suffered severe emotional distress, including nervousness, sleeplessness, stress with accompanying physical symptoms, and an inability to concentrate. Almy further alleged that after Grimes' visit she withdrew from her customary activities, could not perform her duties as wife and mother, was unable to manage her mother's real estate properties, and could not perform her administrative duties at a nonprofit organization.

In November 1998, Almy sought treatment for her emotional distress from Dr. Alexander, who concluded that Almy suffered from a "major depressive disorder." Almy refused medication for her depression but, over the next seven months, she received therapy from Dr. Alexander on several occasions.

Almy alleged that her depressed condition improved until about August 1999, when she learned that Grisham and the Swansons earlier had obtained materials from certain files at St. Anne's containing confidential information about Almy's children. According to Almy's allegations, upon learning that Grisham and the Swansons had made copies of documents from those files, Almy felt "extremely violated, outraged, deeply disturbed

5

and worried," and she "feared for how her children would be treated during the upcoming school year."  As a result, Almy allegedly suffered a serious "setback" in her depression.  She asserted that her husband and several friends observed a "return of her depressive state and debilitating functioning."  Almy also alleged that she again sought counseling from Dr. Alexander, who concluded that Almy's discovery concerning her children's files had caused the "setback" in her depression.

## II. ARGUMENTS ON APPEAL

Almy argues that the circuit court erred in considering Dr. Alexander's deposition testimony when ruling on the defendants' demurrers, because a demurrer addresses only the legal sufficiency of the allegations of a motion for judgment.  Almy also contends that the circuit court erred in sustaining the demurrers because Almy properly pleaded all required elements of intentional infliction of emotional distress and an accompanying conspiracy claim.

In response, Grisham initially argues that Almy did not preserve for appeal the issue whether the circuit court erred in relying on Dr. Alexander's deposition testimony when ruling on the demurrers.[2]  Next, addressing the merits of Almy's pleadings, Grisham contends that the pleadings fail to state a cause of

---

[2] The Swansons and Wong assert essentially the same arguments as Grisham.  Liebman has not filed a brief in this appeal.

6

action.  Grisham asserts that Almy's allegations of emotional distress are identical to the plaintiff's allegations in Russo v. White, 241 Va. 23, 400 S.E.2d 160 (1991), in which this Court held that the pleadings were insufficient to support a claim of intentional infliction of emotional distress.

Grisham also argues that Almy's pleadings are deficient because they do not allege facts sufficient to establish that the defendants' actions were intentional or reckless and were outrageous.  He further contends that because Almy's pleadings do not support a claim for intentional infliction of emotional distress, her conspiracy claim based on that underlying tort likewise fails.

### III. ANALYSIS

We first observe that when ruling on a demurrer, in contrast to ruling on a motion for summary judgment, a court is not permitted to decide the merits of a claim but only may decide whether a plaintiff's factual allegations are sufficient to state a cause of action.  Barber v. VistaRMS, Inc., 272 Va. 319, 327, 634 S.E.2d 706, 711 (2006); see Fun v. Virginia Mil. Inst., 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993); Elliott v. Shore Stop, Inc., 238 Va. 237, 239-40, 384 S.E.2d 752, 753 (1989).  Thus, a demurrer presents an issue of law, not an issue of fact.  See Code § 8.01-273; Harris v. Kreutzer, 271 Va. 188,

7

196, 624 S.E.2d 24, 28 (2006); <u>Glazebrook v. Board of</u>

<u>Supervisors</u>, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

In the present case, the circuit court erred in considering

the factual merit of Almy's allegations in ruling on the

defendants' demurrers.[3] Our analysis does not end here, however,

because Almy asks us to review the circuit court's express

holding that her claims "will not survive demurrer." Almy's

failure to object to the circuit court's consideration of the

deposition testimony does not affect our review because, given

the court's erroneous mode of procedure, we do not address the

substance of the court's analysis but consider only whether the

court reached the correct result, albeit for the wrong reason.

Thus, we confine our review to the legal sufficiency of Almy's

pleadings.[4]  See <u>Harris</u>, 271 Va. at 195, 624 S.E.2d at 28; <u>Dreher</u>

---

[3] We find no merit in the defendants' argument that, based
on our decision in <u>Fleming v. Anderson</u>, 187 Va. 788, 48 S.E.2d
269 (1948), the circuit court properly considered Dr.
Alexander's deposition when ruling on the demurrer. <u>Fleming</u> is
inapposite because, there, the circuit court took judicial
notice of prior judicial proceedings when ruling on a demurrer
solely because the plaintiff's cause of action arose from the
outcome of those prior proceedings. <u>Id.</u> at 794-95, 48 S.E.2d at
272-73.
[4] We observe, in contrast, that on at least two prior
occasions when a circuit court erroneously decided the merits of
a case in ruling on a demurrer, we nevertheless reviewed the
circuit court's decision as if it were a ruling on a motion for
summary judgment. See <u>Shelor Motor Co. v. Miller</u>, 261 Va. 473,
544 S.E.2d 345 (2001); <u>Carmel v. City of Hampton</u>, 241 Va. 457,
403 S.E.2d 335 (1991). In those cases, however, the parties, as
well as the circuit court, treated the pleadings in this manner.
Here, the parties did not ask the circuit court to rule on the

v. Budget Rent-A-Car Sys., Inc., 272 Va. 390, 395, 634 S.E.2d 324, 326-27 (2006); Thompson v. Skate Am., Inc., 261 Va. 121, 128, 540 S.E.2d 123, 126-27 (2001).

We consider the factual allegations of the motion for judgment in the light most favorable to the plaintiff. McDermott v. Reynolds, 260 Va. 98, 100, 530 S.E.2d 902, 903 (2000); W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 384, 478 S.E.2d 295, 300 (1996). We will consider as true the facts alleged therein, the facts impliedly alleged, and the reasonable inferences of fact that can be drawn from the facts alleged. See McDermott, 260 Va. at 100, 530 S.E.2d at 903; Delk v. Columbia/HCA Healthcare Corp., 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000); Breeding v. Hensley, 258 Va. 207, 211-12, 519 S.E.2d 369, 371 (1999).

### A. Intentional Infliction of Emotional Distress

We first recognized this intentional tort as a cause of action in Womack v. Eldridge, 215 Va. 338, 210 S.E.2d 145 (1974). There, we held that the tort has four elements that must be proved: 1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional

merits of the claims, and the defendants merely asserted that Dr. Alexander's deposition supported their position that Almy had failed to state a claim upon which relief could be granted.

distress was severe.  Id. at 342, 210 S.E.2d at 148; accord, Harris, 271 Va. at 203, 624 S.E.2d at 33; Delk, 259 Va. at 136, 523 S.E.2d at 833; Jordan v. Shands, 255 Va. 492, 498-99, 500 S.E.2d 215, 218-19 (1998).

Because of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury, the tort of intentional infliction of emotional distress is "not favored" in the law.  Harris, 271 Va. at 203-04, 624 S.E.2d at 33; Russo, 241 Va. at 26, 400 S.E.2d at 162; Ruth v. Fletcher, 237 Va. 366, 373, 377 S.E.2d 412, 415-16 (1989).  Thus, in contrast to a claim of negligence, a plaintiff alleging a claim for intentional infliction of emotional distress must allege in her motion for judgment all facts necessary to establish the cause of action in order to withstand challenge on demurrer.  Harris, 271 Va. at 204, 624 S.E.2d at 33; Russo, 241 Va. at 28, 400 S.E.2d at 163.  Accordingly, we must consider whether Almy alleged sufficient facts to establish each element of the tort.

### 1) Intentional or Reckless Conduct

We conclude that Almy's pleadings sufficiently allege that Grisham, Alan, and Donna intended to cause Almy severe emotional distress.  This element of the tort is set forth in Almy's allegations that Grisham, Alan, and Donna acted intentionally to falsely accuse Almy, with the specific purpose of causing her

10

humiliation, ridicule, and severe emotional distress.  Almy further alleged that these three defendants intentionally manufactured evidence to cause her distress, and that Grisham expressed his intent to have her "really, really, suffer" for writing the letters.

Almy fails to allege in her motion for judgment, however, that Liebman and Wong engaged in conduct with the intent to cause Almy emotional distress.  Likewise, Almy's pleadings do not contain allegations that the actions of Liebman and Wong were reckless, such that they knew or should have known their act of writing a false report likely would cause Almy severe emotional distress.  Therefore, we hold that Almy has failed to state a cause of action against Liebman and Wong for intentional infliction of emotional distress.

### 2) Outrageous or Intolerable Conduct

We conclude that Almy sufficiently alleged the element of outrageous conduct perpetrated by Grisham, Alan, and Donna. This conduct is described in Almy's allegations that the three defendants devised a scheme to falsely accuse Almy of writing the letters and that, in furtherance of this scheme, Alan and Grisham provided Liebman with the confidential documents improperly obtained from St. Anne's.  Almy further alleged that Alan and Donna knew or should have known that Grisham inappropriately influenced the wording of Liebman's report,

11

causing Liebman to issue a false report implicating Almy.  In addition, Almy alleged that Grisham, Alan, and Donna caused Officer Grimes to confront Almy by providing false information that a handwriting examiner had determined that Almy was the author of the letters.

In reviewing these allegations, we acknowledge that the term "outrageous" does not objectively describe particular acts but instead represents an evaluation of behavior.  Russo, 241 Va. at 26, 400 S.E.2d at 162.  Nevertheless, in the absence of an objective definition of the term, we must make this threshold assessment in determining the sufficiency of Almy's allegations. See id.

We hold that reasonable persons could view the conduct alleged, if proved, as being "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  See Russo, 241 Va. at 27, 400 S.E.2d at 162 (quoting Ruth, 237 Va. at 368, 377 S.E.2d at 413).  When reasonable persons could view alleged conduct in this manner and the other elements of the tort are properly pleaded, the controversy must be resolved at a trial on the merits of the claim, rather than by a circuit court on demurrer. See Burroughs v. Keffer, 272 Va. 162, 168, 630 S.E.2d 297, 301 (2006); Chapman v. City of Virginia Beach, 252 Va. 186, 191, 475

12

S.E.2d 798, 801 (1996); Womack, 215 Va. at 342, 210 S.E.2d at 148.

### 3) Causal Connection Between Conduct and Distress

We hold that Almy alleged sufficient facts to support a conclusion that the conduct of Grisham, Alan, and Donna proximately caused her severe emotional distress. Almy's pleadings contain two primary allegations of proximate causation. First, Almy alleged that these three defendants provided false information to local law enforcement officials and that, as a result, Detective Grimes confronted Almy, causing her to suffer severe emotional distress and depression. Second, Almy alleged that she suffered severe emotional distress caused by her discovery that Grisham and Alan had removed from school files confidential information related to her family. Thus, these allegations of proximate causation were sufficient to survive the defendants' demurrers.

### 4) Severity of Resulting Emotional Distress

Finally, we hold that Almy adequately alleged that she suffered severe emotional distress. Almy asserted that the conduct of Grisham, Alan, and Donna caused her to suffer from several debilitating conditions, including depression, nervousness, and an inability to sleep, which ultimately caused a complete disintegration of virtually every aspect of her life. She allegedly was unable to manage her mother's financial

13

affairs, to carry out her family duties, or to perform her various charitable endeavors.  Also relevant are Almy's allegations that due to her "major depressive disorder" caused by the defendants' false accusations, she was required to undergo extensive therapy from Dr. Alexander.[5]

We hold that these allegations are materially different from the allegations of severe emotional distress in Russo, which we held were inadequate to survive a demurrer.  Unlike the plaintiff in Russo, Almy alleged that she was required to seek professional counseling because of her depression occasioned by the defendants' misconduct.

We likewise conclude that Almy's allegations of severe emotional distress exceed those alleged by the plaintiff in Harris v. Kreutzer, 271 Va. 188, 624 S.E.2d 24 (2006).  While both Almy and the plaintiff in Harris alleged that they required counseling and suffered from severe psychological trauma, depression, humiliation, and injury to reputation, Almy additionally alleged that the defendants' actions rendered her functionally incapable of carrying out any of her work or family responsibilities.  See id. at 204-05, 624 S.E.2d at 34.

---

[5] In addition, the motion for judgment alleges that Almy obtained a forensic psychiatric assessment conducted by David Pickar, M.D.  Although the assessment was obtained for purposes of litigation and Almy did not seek treatment from Dr. Pickar, Dr. Pickar nevertheless allegedly concluded that Almy suffered from a major depressive disorder as a result of the defendants' actions.

14

According to Almy, her emotional distress reached such a level of severity that "[e]very aspect of [her] life [was] fundamentally and severely altered," such that she "had trouble even walking out of the front door."  As a result, Almy's motion for judgment sufficiently alleges emotional distress "so severe that no reasonable person could be expected to endure it."  See id. at 205, 624 S.E.2d at 34 (citing Russo, 241 Va. at 28, 400 S.E.2d at 163).  Thus, we hold that Almy's factual allegations describing her severe emotional distress are adequate to survive a demurrer on this fourth and final element of the tort.

### B. Conspiracy Allegations

We next consider Almy's conspiracy allegations.  We decide the question whether the tort of conspiracy to intentionally inflict emotional distress should be recognized as a cause of action in this Commonwealth.

We begin our analysis with the observation that, in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed.  See Commercial Bus. Sys. v. Halifax Corp., 253 Va. 292, 300, 484 S.E.2d 892, 896 (1997).  This general rule reflects the view of a majority of states that have considered the question.  See, e.g., Macomber v. Travelers Prop. & Cas. Corp., 894 A.2d 240, 254-55 (Conn. 2006); Paul v. Howard Univ., 754 A.2d 297, 310 n. 27 (D.C. 2000); Alexander & Alexander Inc. v. B. Dixon Evander &

15

Assocs., 650 A.2d 260, 265 (Md. 1994); Jones v. BP Oil Co., 632 So.2d 435, 439 (Ala. 1993); Middlesex Concrete Prods. & Excav. Corp. v. The Carteret Indus. Ass'n, 181 A.2d 774, 779 (N.J. 1962); Cook v. Robinson, 116 S.E.2d 742, 744-45 (Ga. 1960).

"The gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use an unlawful means." CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 28, 431 S.E.2d 277, 281-82 (1993) (quoting Gallop v. Sharp, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942)); accord, Commercial Business Sys. v. BellSouth Servs., 249 Va. 39, 48, 453 S.E.2d 261, 267 (1995). As stated above, a claim for intentional infliction of severe emotional distress requires proof of severe emotional distress proximately caused by a defendant's outrageous conduct that is intentional or reckless. See Harris, 271 Va. at 203, 624 S.E.2d at 33; Delk, 259 Va. at 136, 523 S.E.2d at 833; Jordan, 255 Va. at 499, 500 S.E.2d at 219; Womack, 215 Va. at 342, 210 S.E.2d at 148. Thus, under the common law in Virginia, a conspiracy claim based on this underlying tort would include these same elements of proof. See Halifax, 253 Va. at 300, 484 S.E.2d at 896.

As we already have observed, the tort of intentional infliction of emotional distress is "not favored" in the law. See Harris, 271 Va. at 204, 624 S.E.2d at 33; Russo, 241 Va. at

16

26, 400 S.E.2d at 162; Ruth, 237 Va. at 373, 377 S.E.2d at 416. A primary reason for the tort's disfavored status is that because the prohibited conduct cannot be defined objectively, clear guidance is lacking, both to those wishing to avoid committing the tort, and to those who must evaluate whether certain alleged conduct satisfies all elements of the tort. See Russo, 241 Va. at 26, 400 S.E.2d at 162.

If we were to recognize a conspiracy claim based on an agreement to commit this tort, the difficulties resulting from this absence of clear guidance would be compounded. Courts and juries would be faced with the amorphous task of determining whether parties have entered into an agreement to engage in conduct that cannot be defined objectively. See id. Determinations of this nature would invite great uncertainty and speculation on the part of the fact finder.

We also observe that, in Virginia, a plaintiff can allege joint liability of parties who acted in concert to commit the tort of intentional infliction of emotional distress without the need to assert a claim of conspiracy. The case before us plainly illustrates this point. Accordingly, upon consideration of these several factors, we hold that a plaintiff may not assert a cause of action in Virginia for civil conspiracy to intentionally inflict severe emotional distress.

IV. CONCLUSION

17

When a circuit court has reached the correct result for the wrong reason, we will assign the correct reason and affirm the relevant portion of the court's judgment.  Whitley v. Commonwealth, 260 Va. 482, 492, 538 S.E.2d 296, 301 (2000); Mitchem v. Counts, 259 Va. 179, 191, 523 S.E.2d 246, 253 (2000); Hartzell Fan, Inc. v. Waco, Inc., 256 Va. 294, 303, 505 S.E.2d 196, 202 (1998).  Therefore, based on our holdings in this appeal, we will affirm the circuit court's dismissal of Almy's conspiracy claim with regard to all defendants.  We also will affirm the circuit court's dismissal with prejudice the claims of intentional infliction of emotional distress with regard to David Liebman and Cina L. Wong.  We will reverse the circuit court's dismissal of the claim of intentional infliction of emotional distress with regard to John Grisham, Jr., Alan Swanson, and Donna Swanson, and remand the case to the circuit court for a trial on the merits of the remaining claims.

Affirmed in part and final judgment, reversed in part and remanded.

JUSTICE KINSER, concurring in part and dissenting in part.

I concur in the majority's refusal to recognize an independent cause of action for civil conspiracy to intentionally inflict emotional distress, as well as its decision to affirm the circuit court's dismissal of Katherine Almy's claims against David Liebman and Cina L. Wong.  With

18

respect to the portion of the majority opinion holding that Almy's motion for judgment contained sufficient allegations of each element of the tort of intentional infliction of emotional distress to survive demurrer, I respectfully dissent.

To recover for intentional infliction of emotional distress, a plaintiff must show:

> One, the wrongdoer's conduct was intentional or reckless. . . . Two, the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality. . . . Three, there was a causal connection between the wrongdoer's conduct and the emotional distress.  Four, the emotional distress was severe.

Womack v. Eldridge, 215 Va. 338, 342, 210 S.E.2d 145, 148 (1974).  Even assuming Almy pled sufficient facts to satisfy the first three prongs of the four-part Womack test, I find that her allegations concerning the severity of her emotional distress are deficient.[1]

The majority holds otherwise, notwithstanding the opposite conclusion this Court recently reached when confronted with similar allegations in Harris v. Kreutzer, 271 Va. 188, 624 S.E.2d 24 (2006).  In that case, the plaintiff alleged that a licensed clinical psychologist verbally abused her, causing the plaintiff to suffer "severe psychological trauma and mental

---

[1] I express no opinion whether Almy's allegations as to the other three prongs were sufficient because her failure to sufficiently plead the severity of her emotional distress is, by itself, fatal to her cause of action.

19

anguish affecting her mental and physical well-being," the symptoms of which were "nightmares, difficulty sleeping, extreme loss of self-esteem and depression." Id. at 204–05, 624 S.E.2d at 34. Notably, the plaintiff in Harris, unlike the plaintiff in Russo v. White, 241 Va. 23, 25, 28, 400 S.E.2d 160, 161–63 (1991), alleged that she needed "additional psychological treatment and counseling" as a result of the psychologist's actions. Harris, 271 Va. at 205, 624 S.E.2d at 34. Nonetheless, we affirmed the trial court's judgment sustaining the psychologist's demurrer, holding that the plaintiff failed to allege facts showing emotional distress "'so severe that no reasonable person could be expected to endure it.'" Id. (quoting Russo, 241 Va. at 27, 400 S.E.2d at 163). We reached the same result in Russo even though the plaintiff there alleged that she "withdrew from activities and was unable to concentrate at work." 241 Va. at 28, 400 S.E.2d at 163.

In my view, Almy has failed to plead facts relative to the severity of her emotional distress that materially differ from the allegations we held insufficient in Harris and Russo. For this reason, I respectfully dissent from the majority opinion inasmuch as it holds that Almy adequately pled this element in

20

tort.  Thus, I would affirm the judgment of the circuit court in its entirety.[2]

_____

[2] The parties in this case have not argued whether Almy's alleged emotional distress was exaggerated and unreasonable under the circumstances.  See, e.g., Restatement (Second) of Torts § 46 cmt. j (1965) ("The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge."); Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 703 F.2d 1152, 1159 (10th Cir. 1981); Drejza v. Vaccaro, 650 A.2d 1308, 1314 n.16 (D.C. 1994); Cafferty v. Garcia's of Scottsdale, Inc., 375 N.W.2d 850, 854 (Minn. Ct. App. 1985); Dickerson v. Int'l United Auto Workers Union, 648 N.E.2d 40, 48 (Ohio Ct. App. 1994); Tanner v. Rite Aid of W. Va., Inc., 461 S.E.2d 149, 157 n.11 (W. Va. 1995).  Thus, I express no opinion on that issue.