UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Malveaux and Chaney
Argued by teleconference


ZACHARY COOPER, SR.

MEMORANDUM OPINION* BY
v.      Record No. 0478-23-3       JUDGE MARY BENNETT MALVEAUX
                                   MARCH 26, 2024
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCHANAN COUNTY
Patrick R. Johnson, Judge

Zachary Cooper, Sr., *pro se*.

(Elizabeth M. Muldowney; Sands Anderson, PC, on brief), for
appellee. Appellee submitting on brief.


Zachary Cooper, Sr. appeals an order of the circuit court sustaining the Commonwealth's

demurrer and dismissing his complaint with prejudice. On appeal, he argues that the circuit court

erred in sustaining the demurrer because it applied an incorrect standard of review, and because his

pleadings stated a cause of action. He also contends that the circuit court abused its discretion in

failing to allow him to respond to the Commonwealth's demurrer and in dismissing his complaint

with prejudice. For the following reasons, we affirm the circuit court's order.

## I. BACKGROUND

On September 21, 2022, Cooper, *pro se*, filed a complaint against the Commonwealth

under the Virginia Tort Claims Act, Code §§ 8.01-195.1 through -195.9,[1] for claims alleging:

---

\* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] The Virginia Tort Claims Act "constitutes an express limited waiver of the
Commonwealth's immunity from tort claims" by providing that, subject to its provisions, "the
Commonwealth shall be liable for claims for . . . personal injury or death." *Bates v.
Commonwealth*, 267 Va. 387, 391 (2004) (alteration in original) (quoting Code § 8.01-195.3).

(1) "deliberate indifference by the prison administrative and security staff"; (2) "gross negligence for medical malpractice by the prison medical department staff"; and (3) "intentional infliction of emotional distress by both the prison administrative and security staff and the prison medical department staff."

During the time period relevant to the complaint, Cooper was an inmate in the Virginia Department of Corrections ("DOC"). In his complaint, he alleged that prior to the injury that gave rise to his claims, he was housed at Sussex 1 State Prison ("Sussex 1"). The medical department at Sussex 1 provided medical treatment for Cooper's right knee and right shoulder, giving him a knee brace, a compression knee sleeve, and "'bottom bunk' status."

On September 16, 2020, Cooper was transferred to Keen Mountain Correctional Center ("Keen Mountain"). Upon arrival at Keen Mountain, Cooper was "evaluated and screened by the medical department." During this initial evaluation, Cooper informed the medical and security staff that he was wearing a knee brace and was on bottom bunk status because of his right knee and shoulder. His evaluation was "signed off" on by Nurse Bucklen, the health care provider Cooper alleged "denied [him] 'continuity of care' during intake processing."

On September 17 and 20, 2020, Cooper told Bucklen that he needed to have his "medical pass" from Sussex 1 transferred to Keen Mountain and that he also needed a bottom bunk assignment. Bucklen denied these requests. On September 28, 2020, Cooper saw "the sick cell nurse" in regard to his right knee injury and for his eligibility for a bottom bunk assignment. After this evaluation,[2] he was scheduled for an appointment to see a nurse practitioner to allow her to also evaluate his right knee and determine his eligibility for a bottom bunk assignment.

_____

[2] Cooper did not make any allegations as to whether the sick cell nurse provided him with a bottom bunk assignment, but it is evident from his further allegations that he was not provided with a bottom bunk at that time.

When Cooper arrived at Keen Mountain, he was initially housed in a "quarantine pod . . . bottom bunk." On September 30, 2020, Cooper was released from quarantine and moved to a cell where he was assigned a top bunk. Upon arriving at his new cell, Cooper informed Unit Manager Collins and the building security staff "that he could not physically climb the ladder for the top bunk." He showed Collins his Sussex 1 medical pass and was informed "that medical papers from other compounds would not be recognized on Keen Mt." Collins then called the medical department to verify Cooper's medical status and was told there was nothing in Cooper's medical records indicating a need for a bottom bunk. His medical records were maintained by the prison medical staff, and Cooper had no access to them at this time.

That same day, after being told that his medical records did not indicate a need for a bottom bunk, Cooper filed an emergency grievance stating that he was assigned to a top bunk despite his medical need for a bottom bunk assignment. At that time, Keen Mountain had cells available with unoccupied bottom bunks.

That evening, Cooper fell off of the ladder in his cell, landed on a chair, and ended up on the floor. He was found by his "cell partner," who notified prison officials. After examinations by a nurse and a nurse practitioner, Cooper was sent to the hospital.[3] At the hospital, Cooper was diagnosed with a rib contusion.

The next day, October 1, 2020, Cooper returned to Keen Mountain and was assigned to bottom bunks in various quarantine cells. After his fall, "[h]e filed multiple complaints and grievances about his medical status and why he ha[d] not received continuity of medical care from one prison to the next." Cooper did not receive answers to his complaints, and "[a]s a result, [he] began having panic attacks as the feelings of hopelessness became overwhelming."

---

[3] Cooper alleged that the medical transport van in which he was traveling was hit by a car on the way to the hospital. He did not make any allegations in regard to whether he was further injured in the car accident.

- 3 -

In addition, after his fall, Cooper generally experienced "anxiety and depression and incidents of rage," and sought help from a psychologist.

After Cooper filed his complaint, the Commonwealth moved for a bill of particulars, asking the circuit court to require Cooper to provide information about the exact identities of the actors who allegedly committed the torts against him. The court granted the motion, and Cooper filed his bill of particulars on December 14, 2022.

On February 13, 2023, the Commonwealth filed a demurrer to Cooper's complaint. The Commonwealth argued that the complaint failed to state a cause of action for any of the three claims Cooper alleged. First, the Commonwealth argued that Cooper's complaint failed to state a claim for deliberate indifference against prison administrative and security staff because the allegations did not establish that these employees knew of a substantial risk of serious harm to Cooper. Second, the Commonwealth contended that Cooper's complaint failed to state a claim for gross negligence by the medical staff because the allegations demonstrated that the medical staff exercised some degree of diligence and care. Third, the Commonwealth asserted that Cooper's complaint failed to state a claim for intentional infliction of emotional distress because the conduct as alleged by Cooper was neither outrageous nor intolerable, and because Cooper's emotional distress was not so severe that no reasonable person could be expected to endure it.

Without holding a hearing, on February 15, 2023, the circuit court entered an order sustaining the Commonwealth's demurrer and dismissing the case with prejudice.[4] The court did not issue a letter opinion or explain its reasoning in its order.

On March 7, 2023, the circuit court received and filed Cooper's response to the Commonwealth's demurrer. In his response, Cooper challenged the Commonwealth's

---

[4] On March 29, 2023, the circuit court entered a corrected order sustaining the demurrer, in which the court only "correct[ed] the case caption . . . to reflect the [true] case number."

- 4 -

characterization of some of the facts alleged in his complaint.  He also responded to the Commonwealth's legal arguments regarding his claims.  Cooper noted in his response that he had received the Commonwealth's demurrer on February 23, 2023.  In addition, Cooper attached several exhibits to his response.  These exhibits included Cooper's medical records from Sussex 1, medical records related to his injury resulting from his fall, his medical records from Keen Mountain, and grievance forms he submitted requesting a bottom bunk assignment at Keen Mountain.

Also on March 7, 2023, Cooper filed a motion for summary judgment.  He also filed a copy of his motion for a medical malpractice review panel, in which he asked the Supreme Court of Virginia to appoint a medical review panel to review his claim of medical malpractice.  The circuit court took no action on these motions.

This appeal followed.

## II.  ANALYSIS

### A.  Use of Incorrect Standard of Review

Cooper first argues that the circuit court erred in sustaining the Commonwealth's demurrer because it applied an incorrect standard of review, and because his filings did state a cause of action for which relief could be granted for each of his three claims.

"We review a trial court's decision sustaining a demurrer de novo."  *Wright v. Graves*, 78 Va. App. 777, 783 (2023).  "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof.  Accordingly, we accept as true all properly pled facts and all inferences fairly drawn from those facts."  *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 557 (2011) (quoting *Abi-Najm v. Concord Condo., LLC*, 280 Va. 350, 356-57 (2010)).  This Court also "interpret[s] those allegations in the light most favorable to the plaintiff."  *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018).  But we "do not accept the veracity

- 5 -

of conclusions of law camouflaged as factual allegations or inferences." *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)).

"[T]he trial court errs in sustaining a demurrer if a bill of complaint, considered in the light most favorable to the plaintiff, states a cause of action." *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors of Charles City Cnty.*, 259 Va. 419, 427 (2000). Further, even if "a trial court believes a claim brought by a pro se [plaintiff] may ultimately fail, at the pleading stage the trial court is bound by the same procedures, rules and policies which apply to a party represented by counsel." *Ogunde v. Prison Health Servs., Inc.*, 274 Va. 55, 65 (2007).

Cooper argues that the circuit court used the incorrect standard of review in granting the Commonwealth's demurrer because it did not view the allegations stated in his complaint as true, but instead considered the "distorted facts put forth by [the Commonwealth's] demurrer." He asserts that the facts as set forth in his complaint, viewed under the correct standard, did state a cause of action for which relief could be granted for each of his three claims.

It is unclear what facts the circuit court relied on in sustaining the Commonwealth's demurrer because it did not explain its decision in a letter opinion or in its final order. But, contrary to Cooper's assertion, we conclude that the circuit court did not err by using an incorrect standard in this case. When considering the allegations under the correct standard— that is, viewing all of the allegations contained in Cooper's complaint as true—the allegations presented did not state claims for deliberate indifference, gross negligence, or intentional infliction of emotional distress.

With respect to Cooper's first claim, we conclude that the allegations contained in the complaint did not support a claim for deliberate indifference. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In particular, the Eighth Amendment imposes a duty on prison officials to "provide humane conditions of

confinement . . . [and] ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To that end, a prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

A claim under 42 U.S.C. § 1983[5] for deliberate indifference to serious medical needs has two components. *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "The plaintiff must show [1] that he had serious medical needs, which is an objective inquiry, and [2] that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry." *Hayer v. United States Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017). As to the first component, "[t]he objective component of a deliberate indifference claim is satisfied by a serious medical condition." *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). A serious medical condition is one that is "diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). As for the second, the subjective component, deliberate indifference is "a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute

---

[5] 42 U.S.C. § 1983 provides, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Actions under § 1983 may be brought in state courts. *See Maine v. Thiboutot*, 448 U.S. 1, 3 n.1 (1980).

medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. "In the context of a claim related to the denial of medical treatment or a delay in providing such treatment, 'a defendant acts with deliberate indifference if he had actual knowledge of the plaintiff's serious medical needs and related risks, but nevertheless disregarded them.'" *Griffin v. Mortier*, 837 F. App'x 166, 170 (4th Cir. 2020) (quoting *Gordon*, 937 F.3d at 357).

Cooper argues that he did state a cause of action for deliberate indifference against the Commonwealth because he alleged that the prison administrative and security staff knew of and disregarded his medical condition and treatment. His complaint alleged that he personally informed the prison administrative and security staff about his need for a bottom bunk assignment and also showed Unit Manager Collins his prior medical pass from Sussex 1. Further, upon arriving at his new cell where he was assigned a top bunk, Cooper informed the security staff "that he could not physically climb the ladder for the top bunk." He alleged that the prison employees disregarded this information and refused to provide him with a bottom bunk, which led to his injury.

In its demurrer, the Commonwealth argued that these allegations were insufficient to show that Unit Manager Collins or the other unnamed prison administrative and security staff knew of a substantial risk of serious harm to Cooper.[6] We agree, concluding that the circuit court did not err in sustaining the Commonwealth's demurrer on the deliberate indifference claim because Cooper's allegations did not demonstrate that the prison officials were aware of an excessive risk of harm to Cooper's health or safety. "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N. C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting

---

[6] The Commonwealth did not dispute that Cooper suffered a serious medical condition in its demurrer, and thus we do not address this component of deliberate indifference on appeal.

*Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018). A plaintiff can meet the subjective knowledge requirement when "a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842). Specifically, a plaintiff's allegations establish the subjective knowledge requirement by showing "that a substantial risk of [serious harm] was long-standing, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (alterations in original) (quoting *Farmer*, 511 U.S. at 842). But if the requisite subjective knowledge is established, an official may still avoid liability "if [he] responded reasonably to [a known] risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Here, Cooper demonstrated no deliberate indifference on the part of Collins. Although Cooper alleged that he showed Collins his medical pass from Sussex 1, he also alleged that Collins called the medical department at Keen Mountain and was told that there was nothing in Cooper's medical records indicating his need for a bottom bunk. Collins was not deliberately indifferent to Cooper's medical needs; instead, he attempted to verify Cooper's medical status and was informed that nothing in Cooper's medical records showed that a bottom bunk was medically necessary. Therefore, it is clear that Collins was not aware of an excessive risk of harm to Cooper's health or safety.

Cooper also failed to allege deliberate indifference on the part of unnamed prison administrative and security staff. The allegations in Cooper's complaint established that the prison security staff knew of his complaints about his right knee and shoulder pain and his prior bottom bunk assignment at Sussex 1. However, Cooper's complaint also alleged that his request for a bottom bunk assignment at Keen Mountain was initially denied by Nurse Bucklen. In most circumstances, prison officials are entitled to rely upon their health care providers' expertise. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837 (holding that nonmedical supervisory prison officials are entitled to rely on professional judgment of trained medical personnel); *Iko ex rel. Iko v. Shreve*, 535 F.3d 225, 242 (4th Cir. 2008) (noting that where "a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands" (alteration in original) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))). Here, the prison security staff relied on Bucklen's medical decision to not give Cooper a bottom bunk assignment. Therefore, even if the prison security staff had knowledge of Cooper's medical issues, their reliance on a medical expert's judgment was a reasonable response to the risk. *See Farmer*, 511 U.S. at 844-45; *see also Miltier*, 896 F.2d at 854. Accordingly, Cooper's complaint did not properly allege a claim of deliberate indifference on their part.

Cooper next argues that he stated a valid claim for gross negligence by the prison medical staff.[7] Again, we disagree.

---

[7] In his initial complaint, Cooper asserted a claim for "[g]ross [n]egligence for [m]edical [m]alpractice." Cooper asserts this same-styled claim on appeal. However, Virginia recognizes actions for gross negligence and for medical malpractice as separate claims, not one claim as Cooper asserts. *See* Code § 8.01-581.1 (providing the statutory definitions for medical malpractice actions in Virginia); *Patterson*, 301 Va. 181 (providing the elements for gross negligence actions in Virginia). In its demurrer, the Commonwealth responded to Cooper's claim as one of gross negligence. The circuit court, in granting the Commonwealth's demurrer,

- 10 -

"Virginia law defines gross negligence as 'a heedless and palpable violation of legal duty respecting the rights of others which amounts to the *absence of slight diligence*, or the *want of even scant care*.'" *Patterson*, 301 Va. at 198 (quoting *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018)). Stated another way, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." *Cowan v. Hospice Support Care, Inc.*, 268 Va. 482, 487 (2004). Thus, it "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Giddens*, 295 Va. at 614 (quoting *Cowan*, 268 Va. at 487). "Several acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of reckless or total disregard for another's safety." *Id.* at 613-14 (quoting *Chapman v. City of Virginia Beach*, 252 Va. 186, 190 (1996)).

"Ordinarily, the question whether gross negligence has been established is a matter of fact to be decided by [the factfinder]. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Frazier v. City of Norfolk*, 234 Va. 388, 393 (1987). "Because 'the standard for gross negligence [in Virginia] is one of indifference, not inadequacy,' a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree

also necessarily treated Cooper's claim as one for gross negligence, and Cooper failed to challenge the court's treatment of his claim as one solely for gross negligence. Thus, on appeal, we also construe Cooper's claim as one for gross negligence and not medical malpractice. *See* Rule 5A:18.

Relatedly, in a separate assignment of error, Cooper argues that the circuit court erred by denying him the opportunity to have a medical malpractice review panel review his medical malpractice claim. Because we conclude that Cooper's claim was only for gross negligence, and not medical malpractice, this argument is without merit.

of care." *Elliott v. Carter*, 292 Va. 618, 622 (2016) (alteration in original) (quoting *Kuykendall v. Young Life*, 261 F. App'x 480, 491 (4th Cir. 2008)).

Cooper argues that he properly stated a claim for gross negligence by the medical staff at Keen Mountain. His complaint alleged that the medical staff denied him "continuity of care" from his prior prison, Sussex 1, to Keen Mountain, as the staff refused to acknowledge his bottom bunk assignment. He also alleged that the medical staff improperly maintained his medical records when they reported to Collins that there was nothing in his records indicating a need for a bottom bunk assignment.

In its demurrer, the Commonwealth contended that Cooper's allegations demonstrated that the medical staff exercised some degree of diligence and care. We agree, concluding that the circuit court did not err in sustaining the demurrer on this basis. A review of the medical staff's alleged actions leading up to Cooper's fall shows that the staff did exercise some degree of diligence and care. Rather than ignoring Cooper's medical complaints, the medical staff conducted several medical evaluations of Cooper. He was first evaluated by Nurse Bucklen during the medical intake process at Keen Mountain. Although she did not give him bottom bunk status, Bucklen did exercise some care by conducting the evaluation itself. In addition, Cooper was later evaluated by a sick cell nurse in regard to his knee problem. At that time, he was also scheduled to see a nurse practitioner to be evaluated for bottom bunk eligibility. Cooper's allegations demonstrated that the medical staff did take actions to address his concerns about his right knee and his eligibility for bottom bunk status by providing evaluations for these issues. The medical staff, in continuing to evaluate Cooper's medical issues, did not display "a degree of negligence showing indifference to another and an utter disregard of prudence that

- 12 -

amounts to a complete neglect of the safety of such other person." *Cowan*, 268 Va. at 487.[8]

Therefore, we conclude that the circuit court did not err in sustaining the Commonwealth's demurrer on the gross negligence claim.

Cooper also argues that his allegations as pled were sufficient to support a claim for intentional infliction of emotional distress. We find this argument without merit. To adequately plead such a claim, "a plaintiff must allege that '1) the wrongdoer's conduct was intentional or reckless; 2) the conduct was outrageous or intolerable; 3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and 4) the resulting emotional distress was severe.'" *Viers v. Baker*, 298 Va. 553, 564 (2020) (quoting *Almy v. Grisham*, 273 Va. 68, 77 (2007)). Because of the "risks inherent in torts where injury to the mind or emotions is claimed," Virginia law does not favor the tort of intentional infliction of emotional distress. *Harris v. Kreutzer*, 271 Va. 188, 203-04 (2006) (quoting *Ruth v. Fletcher*, 237 Va. 366, 373 (1989)).

Cooper argues that he sufficiently pled a claim for intentional infliction of emotional distress by both the prison administrative and security staff and the medical department, based on his allegations about the staff's indifference and negligence in regard to his medical treatment and care, which caused him to suffer panic attacks and clinical depression.

In its demurrer, the Commonwealth asserted that Cooper's allegations did not establish that the conduct at issue was outrageous or intolerable, or that the resulting emotional distress was severe. Agreeing with the Commonwealth, we conclude that the circuit court did not err in granting the demurrer on either ground.

---

[8] We also reject Cooper's suggestion that the medical staff improperly maintained his medical records when they reported to Collins that there was nothing in his records indicating a need for a bottom bunk assignment. It is clear that the Keen Mountain medical staff had yet to determine whether a bottom bunk was medically necessary for Cooper, and accordingly, his medical records from the facility reflected this determination.

- 13 -

First, the conduct as alleged by Cooper was not so outrageous or intolerable as to sustain a claim for intentional infliction of emotional distress. In *Almy*, our Supreme Court noted that "the term 'outrageous' does not objectively describe particular acts but instead represents an evaluation of behavior." 273 Va. at 78. To survive demurrer, the behavior alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Russo v. White*, 241 Va. 23, 26 (1991)). The alleged conduct here—that the staff intentionally inflicted emotional distress by not assigning Cooper a bottom bunk after he told them that one was medically necessary—does not meet this standard. The medical staff's failure to do more than evaluating Cooper for a bottom bunk assignment and scheduling him for further evaluations, and the administrative and security staff's reliance on these medical evaluations, does not on these facts rise to the level of being outrageous and intolerable.

Second, in regard to the emotional distress suffered, in *Russo*, our Supreme Court held that "liability arises only when the emotional distress is extreme and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." 241 Va. at 27. In his complaint, Cooper alleged that due to the actions of prison staff, he "began having panic attacks," experienced "anxiety and depression and incidents of rage," and sought help from a psychologist. In *Russo*, the Supreme Court affirmed the sustaining of a demurrer where the plaintiff had alleged suffering from nervousness, insomnia, stress, and inability to concentrate, with the Court opining that "the alleged effect on the plaintiff's sensitivities is not the type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it." 241 Va. at 28. The Court reached a similar result in *Harris*, affirming the sustaining of a demurrer where a plaintiff alleged that the defendant had caused her to suffer "nightmares, difficulty sleeping, extreme loss of self-esteem and depression" and that this distress required

psychological treatment and counseling. 271 Va. at 205. In contrast, our Supreme Court reached a different result in *Almy*. There, the plaintiff alleged distress similar to the plaintiff in *Russo* and that she was required to seek professional counseling like the plaintiff in *Harris*, but also further alleged that her emotional distress left her "functionally incapable of carrying out any of her work or family responsibilities." 273 Va. at 80. The Court held that these factual allegations were sufficient to survive demurrer. *Id.*

The allegations contained in Cooper's complaint are more akin to those in *Harris* and *Russo* than in *Almy*. Cooper did not allege that his emotional distress was so severe as to render him incapable of carrying out daily tasks. We conclude that, as in *Harris* and *Russo*, his complaint did not allege extreme emotional distress "where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo*, 241 Va. at 27.

Because Cooper's complaint did not contain allegations indicating that the conduct at issue was outrageous or intolerable, or that the resulting emotional distress was severe, we conclude that the circuit court did not err in sustaining the Commonwealth's demurrer on his intentional infliction of emotional distress claim.[9]

B. Failure to Allow Response to Demurrer and Dismissal with Prejudice

Cooper argues that the circuit court abused its discretion in failing to allow him to respond to the Commonwealth's demurrer, and by dismissing his complaint with prejudice.

---

[9] Pertaining to his intentional infliction of emotional distress argument, Cooper submitted a supplemental filing in this Court, citing two cases, *Norfolk & Western Ry. v. Ayers*, 538 U.S. 135 (2003), and *Kondaurov v. Kerdasha*, 271 Va. 646 (2006), in support of the proposition "that mental anguish may be inferred from bodily injury and that it is not necessary to prove it with specificity." Both cases cited by Cooper are inapposite, as neither involves the tort of intentional infliction of emotional distress. *Ayers* involved a claim for negligently inflicted physical injury and attendant pain and suffering. 538 U.S. at 141-42. At issue in *Kondaurov* was an award of damages for emotional distress resulting from a personal injury action. 271 Va. at 650, 656.

Cooper's assignment of error has two components. He first argues that the circuit court erred in failing to allow him to respond to the Commonwealth's demurrer. We disagree, because the record does not indicate that the circuit court failed to allow Cooper to respond to the Commonwealth's demurrer. Cooper in fact did respond to the Commonwealth's demurrer and his responsive filing was entered by the circuit court, although not until after entry of the court's final order. Cooper contends that the late filing occurred because the prison mailing system delayed his receipt of the Commonwealth's demurrer. However, nothing in the record indicates that the court prohibited Cooper from responding to the Commonwealth's demurrer. Cooper also does not cite any authority for the proposition that the circuit court had to wait until it received a responsive pleading from him before entering an order on the Commonwealth's demurrer. Further, there is no indication in the record that Cooper argued to the circuit court that it erred in not allowing him to respond to the Commonwealth's demurrer or that he objected to the entry of the court order prior to the court receiving his response. *See* Rule 5A:18.

Cooper argues, however, that the circuit court's entry of the final order prior to the filing of his responsive pleading demonstrates that the court did not fully review his case. We note that there is no indication in the record that the circuit court did not fully review all of the pleadings entered in this matter, including those entered after the court entered its final order sustaining the demurrer.[10] We further note that Cooper's response did not include new factual allegations supporting his claims for deliberate indifference, gross negligence, and intentional infliction of emotional distress. Additionally, the documents attached to his response weakened, rather than strengthened, his claims. Cooper attached his medical records to the response, including his medical records from Sussex 1. Those records indicated that Cooper was given a bottom bunk

---

[10] Cooper's response to the demurrer was filed within the 21-day period after the entry of the final order, during which the court retained jurisdiction to modify the order if it was persuaded by the arguments contained in Cooper's response. *See* Rule 1:1.

- 16 -

assignment at that facility beginning on June 27, 2019 and ending on June 25, 2020, a date prior to his transfer to Keen Mountain in September 2020. Thus, the exhibits attached to Cooper's response weakened his assertion that it was medically necessary for him to have been given a bottom bunk assignment upon arrival at Keen Mountain, which was the basis for his deliberate indifference, gross negligence, and intentional infliction of emotional distress claims.

Cooper next argues that the court erred in dismissing his complaint with prejudice. Rule 1:8 states that "[l]eave to amend shall be liberally granted in furtherance of the ends of justice." *See also* Code § 8.01-273 ("A demurrer may be amended as other pleadings are amended."). "We review a circuit court's grant or denial of leave to amend a pleading under an abuse-of-discretion standard." *Theologis v. Weiler*, 76 Va. App. 596, 612 (2023). "[A] trial court's decision refusing leave to amend after a showing of good cause is, in ordinary circumstances, an abuse of discretion." *Ford Motor Co. v. Benitez*, 273 Va. 242, 252 (2007).

We do not address Cooper's argument on appeal because he neither asked the court below for leave to amend nor challenged its decision to dismiss with prejudice. Here, Cooper did not ask the circuit court for leave to amend his complaint, either before or after the court sustained the Commonwealth's demurrer. He also did not submit a proposed amended complaint. *See* Rule 1:8 (noting that "any written motion for leave to file an amended pleading must be accompanied by a properly executed proposed amended pleading, in a form suitable for filing"). "[T]he Supreme Court has . . . made clear that an appellant may not assert error to the denial of leave to amend when, as here, '[t]he record contains no request . . . for leave to amend . . . or a proposed . . . amended complaint." *Theologis*, 76 Va. App. at 612 (second and subsequent alterations in original) (quoting *TC MidAtlantic Dev., Inc. v. Commonwealth, Dep't of Gen. Servs.*, 280 Va. 204, 214 (2010)). Further, Cooper did not object to the circuit court's failure to grant leave to amend. *See* Rule 5A:18. Because Cooper failed to move to amend his

complaint and did not object to the court's dismissal of it, we cannot say the circuit court abused its discretion in dismissing the complaint with prejudice. *See Theologis*, 76 Va. App. at 612 (holding that the circuit court did not abuse its discretion when it sustained demurrers without leave to amend, when the record contained no indication that appellant asked for leave to amend and did not object to the circuit court's failure to grant leave to amend).

### III.  CONCLUSION

We hold that the circuit court did not err in sustaining the Commonwealth's demurrer to Cooper's complaint.  We further hold that the circuit court did not abuse its discretion in

dismissing the complaint with prejudice. Accordingly, we affirm the decision of the circuit court.[11]

*Affirmed.*

---

[11] On appeal, appellant presents three additional assignments of error, alleging that the circuit court erred in: (1) requiring him to present his negligence claim with greater particularity than Rule 3:18(b) required; (2) applying an incorrect standard of review for his claim of intentional infliction of emotional distress; and (3) failing to provide an opinion, findings of fact, or conclusions of law in sustaining the demurrer. Appellant did not make any of these arguments before the circuit court. Therefore, they are procedurally barred under Rule 5A:18.

Moreover, even if this Court were to consider them on appeal, we conclude that all are without merit. For his negligence argument, appellant asserts that his claim of gross negligence did not have to be pled differently than any other degree of negligence, citing Rule 3:18(b)'s language that "[a]n allegation of negligence . . . is sufficient without specifying the particulars of the negligence." However, his argument ignores the fact that, with respect to gross negligence, to survive a demurrer, a plaintiff must allege specific facts that "satisfy the legal threshold for proving a prima facie case of gross negligence." *Patterson*, 301 Va. at 198.

Cooper also argues that his "claim of emotional distress was wrongfully reviewed using the *Womack*-standard," when his claim was one of emotional distress resulting from physical injury, and thus should have been evaluated under the "*Hughes*-standard." In *Womack v. Eldridge*, 215 Va. 338, 342 (1974), our Supreme Court recognized for the first time in Virginia a cause of action for intentional infliction of emotional distress unaccompanied by physical injury and set forth the elements of this tort. In contrast, in *Hughes v. Moore*, 214 Va. 27, 34 (1973), our Supreme Court held that, when certain elements are met, a plaintiff may recover for a claim of negligent infliction of emotional distress. Here, Cooper's complaint stated a claim for intentional infliction of emotional distress, not a claim for negligent infliction of emotional distress. Thus, the circuit court correctly used the principles articulated in *Womack* in evaluating Cooper's claim of intentional infliction of emotional distress.

Finally, Cooper contends that the circuit court erred by failing to provide an opinion, findings of fact, or conclusions of law related to its judgment sustaining the demurrer and dismissing Cooper's claims with prejudice. But "[a]bsent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (alteration in original) (quoting *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015)). Cooper provides no such statutory requirement or any other authority that required the circuit court to issue findings of fact and conclusions of law in the instant case, and thus we conclude that the court did not err in failing to do so here.